UNION PACIFIC RESOURCES GROUP, INC., Union Pacific Oil & Gas Co., and Union Pacific Resources Co., and Peach Ridge Pipeline Company, L.P., Duke Energy Fuel, Inc., Rio Bravo Gas Systems, L.L.C., and Duke Energy Southwest Ozona Plant, L.L.C., Appellants,

v.

Lowell F. HANKINS, The Ada L. Pierce Testamentary Trust and The Victor Lenore Pierce Miller Trust, Appellees.

No. 08–99–00494–CV.

Court of Appeals of Texas, El Paso.

June 28, 2001.

Rehearing Overruled July 25, 2001.

Steven C. Kiser, Lynch, Chappell & Alsup, Midland, Mary Ann Joerres, Dallas, Neil D. Kelly, Hughes & Luce, L.L.P., Raymond Doak Bishop, King & Spalding, Houston, Attorneys for Appellants.

Robert R. Herring, James J. Ormiston, Levon G. Hovnatanian, Martin Disiere & Jefferson, L.L.P., Houston, Frank Weaver Rose, Smith Carter Rose Et Al., San Angelo, Attorneys for Appellees.

Before Panel No. 4 BARAJAS, C.J., LARSEN, and McCLURE, JJ.

### OPINION

LARSEN, Justice.

This is an interlocutory appeal from an order certifying a class action in an oil and gas case under Tex.R.Civ.P. 42. Plaintiffs represent royalty interest owners in oil and gas leases in Crockett County, Texas. Appellants contend that the trial court abused its discretion in certifying the case as a class action. We affirm the trial court's order.

### FACTS

Appellees, Lowell F. Hankins and Pierce Miller, as Trustee for The Ada L. Pierce

Testamentary Trust and The Victor Lenore Pierce Miller Trust, brought a class action suit against Union Pacific Resources Group, Inc. (UPRG) and its affiliates alleging breach of the implied covenant to manage and administer the leases, and unjust enrichment, and requesting an accounting and injunctive relief. Appellees also alleged that by selling the gas to its affiliates at favorable prices and using the proceeds to pay the royalties, UPRG failed to obtain the best current market prices for the gas and failed to pay royalties based on the true market prices.

The plaintiffs sought class action on behalf of those owning royalty interests under leases owned or operated by UPRG or one of its affiliates in Crockett County. After a hearing on the matter, the trial court certified the class as:

All individuals and entities who:

a. Own or owned royalty under leases from which gas is produced, where

b. The leases were owned and/or operated by the Defendant Union Pacific Resources Group and/or an affiliate of Union Pacific Resources Group, and

c. The leases are located in Crockett County, Texas, and

d. The gas was purchased by Defendant Union Pacific Fuels and/or another affiliate of Union Pacific Resources Group.

Excluded from the class are: any royalty owners whose leases specifically allow for affiliate transactions or index pricing as used by the defendants; plaintiffs involved in separate litigation with the defendants;[1] and the defendants and all affiliates. The

trial court designated Hankins and Miller, Trustee, as the class representatives.

The evidence at the hearing revealed that since 1976, there have been approximately 590 oil and gas leases filed in Crockett County that have been bought by, owned by, or assigned to Union Pacific Resources Company or one of its affiliates. Contained within those 590 leases are 122 unique lease forms and 58 different types of royalty clauses. The fifty-eight types of clauses can be categorized into eight groups. There are also thirteen different gathering systems, for which various price indexes are used to determine the wellhead value of the gas produced.

On March 8, 2001, we issued an order and opinion abating the appeal because the trial court did not include a trial plan in its certification order, and remanding the cause to the trial court for further proceedings in accordance with *Southwestern Refining Co., Inc. v. Bernal.*[2] We ordered the trial court to prepare a supplemental order in compliance with *Bernal.* The trial court rendered three orders: (1) a Supplemental Class Certification Order—Trial Plan Order; (2) an Order to Compile Supplemental Clerk's Record and Transmit Record to Court of Appeals; and (3) an Order denying defendants' request for a hearing on their Motion to Reconsider Class Certification and Objections to Plaintiffs' Proposed Supplemental Class Certification Order. The supplemental record containing the three orders, as well as the motions, briefings, and other documents that were filed during the abatement, has been filed with this Court.

---

1. Excluded are plaintiffs in the case of Chas. E. Davidson III and Stirrup Ranch Co. v. Union Pacific Resources Co. and Union Pacific Oil & Gas Co., Cause No. 96–06–05864, 112th Judicial District Court, Crockett County, Texas and the case of Perry v. Amax Oil & Gas, Inc. and Union Pacific Resources Co.,

Cause No. 95–08–05794, 112th Judicial District Court, Crockett County, Texas.

2. *See Union Pac. Resources Group v. Hankins,* 41 S.W.3d 286, 289 (Tex.App.—El Paso 2001, n.p.h.) (citing *Southwestern Refining Co., Inc. v. Bernal,* 22 S.W.3d 425, 435 (Tex.2000)).

Appellants filed a motion for leave of court to file amended and supplemental notices of appeal from the three supplemental orders. We denied the motion. Appellees filed a motion to expedite the appeal, which is now rendered moot by the issuance of this opinion.

Appellants raise nine issues challenging the certification order as an abuse of discretion. They have also filed a supplemental brief challenging the trial-plan order in two issues.

## STANDARD OF REVIEW

■ A trial court has broad discretion in determining whether a suit should be maintained as a class action.[3] In reviewing a class certification order, we will reverse on appeal only if the trial court has clearly abused its discretion.[4] A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding principles.[5] In making its determination, the trial court may consider the pleadings and other material in the record, along with the evidence presented at the certification hearing.[6] The fact that a trial judge decided an issue differently than would the appellate judge does not alone demonstrate an abuse of discretion.[7] We view the evidence in the light most favorable to the trial court's action and indulge every presumption favorable to the trial court's judgment.[8]

## Requirements of Class Certification

■ In order to maintain a lawsuit as a class action, the plaintiff must first satisfy four requirements: (1) the class must be so numerous that joinder of all members is impracticable (the numerosity requirement); (2) there must be questions of law or fact common to the class (the commonality requirement); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class (the typicality requirement); and (4) the representative parties must fairly and adequately protect the interests of the class (the adequacy of representation requirement).[9] Once these threshold requirements are met, the plaintiffs must also meet at least one of the criteria enumerated under Rule 42(b).[10]

Here, the trial court found that the requirements of Rule 42(a) were met and certified the class under Rule 42(b)(1)(A), 42(b)(2), and 42(b)(4). Under Rule 42(b)(1)(A), a class action may be maintained if the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the party opposing the class.[11] Rule 42(b)(2) allows class certification if the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appro-

3. *Glassell v. Ellis,* 956 S.W.2d 676, 681–82 (Tex.App.—Texarkana 1997, pet. dism'd w.o.j.).

4. *Dresser Industries, Inc. v. Snell,* 847 S.W.2d 367, 371 (Tex.App.—El Paso 1993, no writ).

5. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985).

6. *Tana Oil & Gas Corp. v. Bates,* 978 S.W.2d 735, 741 (Tex.App.—Austin 1998, no pet.).

7. *Downer,* 701 S.W.2d at 242; *Dresser,* 847 S.W.2d at 371.

8. *Bates,* 978 S.W.2d at 741.

9. Tex.R.Civ.P. 42(a); *Southwestern Refining Co., Inc. v. Bernal,* 22 S.W.3d 425, 433 (Tex. 2000).

10. *Bernal,* 22 S.W.3d at 433.

11. Tex.R.Civ.P. 42(b)(1)(A).

priate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.[12] Rule 42(b)(4) requires a finding both that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.[13]

In applying Rule 42(b)(4), the trial court may consider: (a) the interest of members of the class in individually controlling the prosecution of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in the management of a class action.[14] Rule 42(c)(1) provides that at any time before final judgment, the trial court may alter, amend, or withdraw the certification, or may order the naming of additional parties to insure adequate representation.[15]

■■■■ Class certification does not require a determination of the merits of the class members' claims.[16] Similarly, it is improper to evaluate the merits of defenses asserted against the class, because the probability of the plaintiffs' success on the merits is an improper standard by which to measure class certification.[17]

### Denial of Substantive, Contractual, and Constitutional Rights

In Issue One, defendants contend that determination of the liability claims on a class basis will enlarge or diminish the substantive rights and duties of the parties and the unnamed class members. In Issue Two, they contend that resolution of the plaintiffs' claims on a class basis deprives the parties of their constitutional and contractual rights.

■■■■ The class action is a procedural device intended to advance judicial economy by trying claims together that lend themselves to collective treatment; however, it is not meant to alter the parties' burdens of proof, right to a jury trial, or the substantive prerequisites to recovery under a particular cause of action.[18] "Procedural devices may 'not be construed to enlarge or diminish any substantive rights or obligations of any parties to any civil action.'"[19] Essentially, convenience and economy must yield to a fair and impartial trial.[20] Basic to the right to a fair trial is that each party have the opportunity to adequately and vigorously present any material claims and defenses.[21]

■■■■ Because UPRG did not raise these issues in the trial court below, however, they are waived.[22] Even constitu-

12. Tex.R.Civ.P.4 42(b)(2).

13. Tex.R.Civ.P. 42(b)(4).

14. *Id.*

15. Tex.R.Civ.P. 42(c)(1).

16. *See Intratex Gas Co. v. Beeson,* 22 S.W.3d 398, 404 (Tex.2000).

17. *See Microsoft Corp. v. Manning,* 914 S.W.2d 602, 607 (Tex.App.—Texarkana 1995, writ dism'd).

18. *Bernal,* 22 S.W.3d at 437.

19. *Id.; see also* Tex.R.Civ.P. 815.

20. *Bernal,* 22 S.W.3d at 437.

21. *Id.*

22. *See* Tex.R.App.P. 33.1(a).

tional claims can be waived if not preserved.[23]

Even if not waived, the claims are without merit. UPRG asserts a denial of due process in that it will be deprived of the right to develop and present its defenses and variant facts to a jury. UPRG further asserts that certification of the implied covenant claim enlarges and diminishes the contractual rights of the parties and the unnamed class members by adding royalty rights to which they are not entitled and by deleting contract rights they possess. That is, recognizing the implied covenant essentially amends the contract to allow royalty payments that did not previously exist. Also, appellants argue that they will be denied the right to receive timely notice and an opportunity to cure, the right to rely on the express terms of the leases, and to show that the royalties paid were correct. We disagree.

■■■ Contrary to UPRG's assertions, the record does not indicate that it would be precluded from presenting its defenses in the trial court. As each class member must file proof of his or her claim, UPRG will have the opportunity to show that a particular member was paid the correct amount of royalty. The appellees also point out that a plaintiff's failure to comply with a notice-before-suit provision in an oil and gas lease does not constitute a defense to a suit for damages.[24]

■■■ Finally we note that in post-submission letters to this Court, both parties urge that the recent Texas Supreme Court case of *Yzaguirre v. KCS Resources, Inc.*[25] supports the merits of their positions on implied covenants (or lack thereof). We find it unnecessary to address these contentions, however, as it is well settled that an appellate court's review of a class certification order should not include examining the merits of claims or defenses asserted by the parties.[26] Whatever impact *Yzaguirre* may have upon this case, then, remains for resolution at another stage of litigation. Issues One and Two are overruled.

### Commonality

■■■ In Issue Three, UPRG challenges the trial court's finding of commonality. Questions common to a class are those which when answered as to one class member are answered as to all class members.[27] Commonality, however, does not require that all questions of law and fact must be identical, rather that an issue of law or fact exists that inheres in the complaints of all class members.[28] The threshold is not high, being met when at least one issue's resolution would affect the claims of all or a significant number of class members.[29] Class certification will

**23.** *Dreyer v. Greene,* 871 S.W.2d 697, 698 (Tex.1993) (as a rule, a party must assert a claim, including a constitutional claim, in the trial court in order to raise it on appeal).

**24.** *See Texas Oil & Gas Corp. v. Vela,* 429 S.W.2d 866, 875 (Tex.1968).

**25.** 53 S.W.3d 368 (Tex. 2001).

**26.** *See State Farm Mut. Auto. Ins. Co. v. Lopez,* 45 S.W.3d 182 189 (Tex.App.—Corpus Christi 2001, pet. filed); *Peltier Enterprises v. Hilton,* 51 S.W.3d 616 (Tex.App.—Tyler 2000, pet. filed); *West Teleservices v. Carney,* 37 S.W.3d 36, 40 (Tex.App.—San Antonio 2000, no pet.); *Henry Schein, Inc. v. Stromboe,* 28 S.W.3d 196, 210 (Tex.App.—Austin 2000).

**27.** *Chevron U.S.A. Inc. v. Kennedy,* 808 S.W.2d 159, 162 (Tex.App.—El Paso 1991, writ dism'd w.o.j.).

**28.** *Dresser,* 847 S.W.2d at 372.

**29.** *Hi–Lo Auto Supply, L.P. v. Beresky,* 986 S.W.2d 382, 387 (Tex.App.—Beaumont 1999, no pet.).

not be prevented merely because damages must be determined separately for each class member.[30]

■ The trial court must first identify the substantive issues controlling the litigation's outcome.[31] The purpose of this inquiry is not to weigh the substantive merits of each class member's claims, but rather to determine whether the character and nature of the case satisfies the commonality requirement.[32]

■ The parties dispute whether the leases contain an implied covenant to market. The Texas Supreme Court has recognized implied covenants to: (1) develop, which means to drill an initial well and to reasonably develop the lease; (2) protect the leasehold, which includes protection from local and field-wide drainage; and (3) manage and administer the lease.[33] Included in the covenant to manage and administer the lease is the duty to reasonably market the oil and gas produced from the premises.[34] Under this implied obligation, the lessee must market the production with due diligence and obtain the best price reasonably possible.[35] Where a royalty clause provides for royalties based on market value, the lessee has an obligation to obtain the best current price reasonably obtainable.[36] The standard of care applied to test the performance of the lessee in marketing the gas is that of a reasonably prudent operator under the same or similar circumstances.[37] Typically, implied covenants are only imposed when they are fundamental to the purposes of the mineral lease and when the lease does not expressly address the subject matter of the covenant sought.[38]

■ Here, although the individual amounts of royalties due may vary among the class members, the conduct of UPRG, the issues regarding UPRG's transactions with its affiliates, and the resulting diminished royalties are pertinent to all class members.[39] Moreover, the issue of whether appellants breached the implied covenant to market would apply equally. Thus, the common issues here are sufficient to satisfy the commonality requirement under Rule 42(a). Issue Three is overruled.

### *Typicality*

■ In Issue Eight, UPRG challenges the typicality criterion for certification. The "typicality" requirement is satisfied when the evidence shows that the claims of the class representative have the same essential characteristics as those of the class as a whole.[40] The claims need not be identical or perfectly coextensive, but only substantially similar.[41] To be typical, the representative's claims must arise from the same event or course of conduct giving rise to the claims of other class

---

30. *Id.*

31. *Sun Coast Resources, Inc. v. Cooper,* 967 S.W.2d 525, 533 (Tex.App.—Houston [1st Dist.] 1998, pet. dism'd w.o.j.).

32. *Id.*

33. *HECI Exploration Co. v. Neel,* 982 S.W.2d 881, 889 (Tex.1998); *Amoco Production Co. v. Alexander,* 622 S.W.2d 563, 567 (Tex.1981).

34. *Cabot Corp. v. Brown,* 754 S.W.2d 104, 106 (Tex.1987).

35. *Id.*

36. *Id.*

37. *Id.*

38. *HECI,* 982 S.W.2d at 889.

39. *See Chevron,* 808 S.W.2d at 162.

40. *Chevron,* 808 S.W.2d at 162.

41. *Dresser,* 847 S.W.2d at 372; *Id.*

members and must also be based on the same legal theories.[42] A nexus must exist between the representative's claims and those of the other class members.[43]

Appellants contend that because Hankins' royalty interests were acquired in 1991, such interests are not typical of other owners whose interests have been held for generations. Further, they assert that Hankins was not entitled to royalty payments under his lease, and therefore his claim for royalty payments is subject to offset or counterclaim. They argue that this defense may not apply to other class members, and thus would not be typical of the other members. Appellants also assert that the Pierce Trust claims are not typical because their leases provide for royalties to be taken in-kind or by a specific formula, and are therefore not typical of leases of other class members.

Appellants also challenge the representatives on the grounds that they only hold royalty interests in a small percentage of the wells in the defendant-operated gathering systems, and therefore their proof of claims will not carry over to the other class members, particularly where the prices and deductions used in calculating royalties are different for each gathering system. Further, appellants assert that the defense against Hankins and the Pierce Trusts for failure to provide written notice prior to filing suit, as required by their leases, may not apply to other class members.

 The fact that the representatives may have defenses applicable to them that are not applicable to other class members will not defeat typicality.[44] Here, the common issues of the underpayment of royalties and breach of the implied covenant to market applies to the representatives as well as the other class members, even though the size of their interest ownerships may be different, and the leases have different express terms. Thus, a sufficient nexus exists between the claims of the representatives and the other class members.

### Adequacy of Representation

 Under this same issue, appellants also challenge the adequacy of representation criterion. Adequacy of representation is a question of fact that must be determined based on the individual circumstances of each case, and is addressed to the sound discretion of the court.[45] Factors to consider include: the adequacy of counsel; potential conflicts of interest; plaintiffs' personal integrity; the representative's knowledge of the litigation and belief in the legitimacy of the grievance whether or not the class is unmanageable because of geographical limits; and whether the plaintiffs can afford to finance the class action.[46] Two requirements for adequacy of representation include: (1) the absence of antagonism between the representative and the class members; and (2) the assurance that through class counsel, the representative will vigorously prosecute the class's claims.[47]

Appellants contend that the representatives are inadequate due to conflicts of interest. More specifically, because of the

---

**42.** *Nissan Motor Co., Ltd. v. Fry*, 27 S.W.3d 573, 583 (Tex.App.—Corpus Christi 2000, pet. denied); *Hi–Lo Auto Supply*, 986 S.W.2d at 387.

**43.** *Dresser*, 847 S.W.2d at 372; *Sun Coast Resources*, 967 S.W.2d at 537.

**44.** *Dresser*, 847 S.W.2d at 373; *Glassell*, 956 S.W.2d at 685.

**45.** *Dresser*, 847 S.W.2d at 373.

**46.** *Id.*

**47.** *Glassell*, 956 S.W.2d at 682.

differing royalty clauses among the leases held by other class members, counsel for the representatives creates conflicts by espousing legal theories that will advance the rights of certain members at the expense of other members. As such, counsel violates the fiduciary duties owed to each class member.

The fair and adequate representation requirement applies to both class representatives as well as class counsel.[48] Class counsel must serve the interests of the entire class and will fail in this requirement if a conflict of interest exists.[49] However, it is the clients that make the complaint that their attorney has a conflict of interest, and such complaint should be addressed through disciplinary action rather than on appeal concerning class certification.[50] Moreover, because appellants are not represented by class counsel, they lack standing to raise this issue.[51] Accordingly, the trial court did not abuse its discretion in finding the typicality and adequacy of representation requirements were met. Issue Eight is overruled.

### Predominance, Superiority, and Manageability

In Issues Four, Five, Six, Seven, and Nine, UPRG challenges certification under the provisions of Rule 42(b)(1)(A), 42(b)(2), and 42(b)(4). Specifically, appellants contend that the trial court abused its discretion in certifying the class action because: the requirements of Rule 42(b)(1) were not met; the requirements of Rule 42(b)(2)

were not met; the requirement that common questions of law or fact predominate over individual issues was not met under Rule 42(b)(4); and the requirement that a class action is the superior method of adjudication was not met under Rule 42(b)(4). Because the predominance requirement is the most stringent, we will address this issue first.

Courts determine if common issues predominate over individual ones by identifying the substantive issues that will control the outcome of the case, assessing which issues will predominate, and determining if the predominating issues are common to the class.[52] The test for evaluating predominance is not whether common issues outnumber individual issues, but "whether common or individual issues will be the object of most of the efforts of the litigants and the court."[53] As the Supreme Court stated in *Bernal*, "If, after common issues are resolved, presenting and resolving individual issues is likely to be an overwhelming or unmanageable task for a single jury, then common issues do not predominate."[54]

The Texas Supreme Court has made it clear that a trial court must perform a "rigorous analysis" before ruling on class certification to determine whether all prerequisites to certification have been met.[55] "If it is not determinable from the outset that the individual issues can be considered in a manageable, time-efficient, yet fair manner, then certification is not appropriate."[56]

---

**48.** *Id.* at 684.

**49.** *Id.* at 685.

**50.** *Id.*

**51.** *Id.*

**52.** *Bernal*, 22 S.W.3d at 434.

**53.** *Id.; see also Entergy Gulf States, Inc. v. Butler*, 25 S.W.3d 359, 361 (Tex.App.—Texarkana 2000, no pet.).

**54.** *Bernal*, 22 S.W.3d at 434.

**55.** *Id.* at 435.

**56.** *Id.* at 436.

From our review of the record, it does not appear that the trial court chose to "certify now and worry later," a method expressly rejected by the Texas Supreme Court in *Bernal*.[57] Here, the trial court heard extensive expert testimony and argument from both sides at the certification hearing with an immense amount of evidence concerning the issues at hand. The hearing alone generated eleven bound volumes of testimony and exhibits.

■ In its Supplemental Class Certification Order—Trial Plan, the trial court set out the substantive issues that would control the outcome of the case and how the case would likely be tried. The order further explains how damages would likely be determined. We conclude that the trial court appropriately understood the claims, defenses, relevant facts, and applicable substantive law, and considered the evidence in reaching its determination to certify the class.

In *Dresser Industries*, the plaintiffs alleged that the defendants, who were well servicing companies hired to increase productivity, engaged in a scheme to cheat on materials used to service the wells, thereby reducing the amount of recoverable oil.[58] Each plaintiff claimed that the scheme to cheat on materials damaged his or her royalty interest.[59] The court of appeals held that the trial court did not abuse its discretion in finding that the common issues, that is the cheating scheme used to service the wells, predomi-

nated over the individual issues of false representations, reliance, damages, defenses, and the facts surrounding the defendants' activities over six years at 523 wells.[60]

In contrast, in *Bernal*, the causation and damages issues were uniquely individual to each of the 904 class members based on each member's proximity to an exploding tank.[61] Thus, the Supreme Court concluded that individual issues predominated over common ones and that the trial court's certification order was an abuse of discretion.[62]

■ Here, the predominant issues concern whether the appellants underpaid the royalties to the class members through their alleged common scheme of inter-affiliate conveyances at indexed prices. The fact that damage issues may have to be computed individually for different class members does not preclude class certification.[63] These damages may be determined through proof-of-claim forms, individual damage hearings, or other manageable means.[64] Thus, because the record provides a reasonable basis for the trial court's finding of the predominance requirement, we cannot conclude that the trial court abused its discretion.

■ A class action is the superior method of adjudication when the benefits of class-wide resolution of common issues outweigh any difficulties that may arise in the management of the class.[65] In assess-

---

**57.** *See id.* at 435.

**58.** *Dresser,* 847 S.W.2d at 371.

**59.** *Id.*

**60.** *Id.* at 375.

**61.** *Bernal,* 22 S.W.3d at 436–37.

**62.** *Id.* at 438–39.

**63.** *Henry Schein, Inc. v. Stromboe,* 28 S.W.3d 196, 207 (Tex.App.—Austin 2000, pet. filed); *Sun Coast Resources,* 967 S.W.2d at 534.

**64.** *See Dresser,* 847 S.W.2d at 375; *Stromboe,* 28 S.W.3d at 207.

**65.** *See Dresser,* 847 S.W.2d at 375; *Graebel/Houston Movers, Inc. v. Chastain,* 26 S.W.3d 24, 34 (Tex.App.—Houston [1st Dist.] 2000, pet. dism'd w.o.j.).

ing whether a class action is superior, the trial court may consider whether: (1) class members will benefit from the discovery that has already been completed, thereby eliminating duplication of effort; (2) the trial judge has already spent substantial time and effort becoming familiar with the issues of the case, which weighs favorable for a fair and expeditious result; and (3) class members have an interest in resolving common issues by class action.[66]

▮ Here, the record shows that discovery has commenced. Depositions have already been taken of corporate representatives, as well as the class representatives. The record volumes from the certification hearing contain numerous exhibits and documents. Thus, the class members would benefit from the time and effort already invested by the parties and the court. Given the commonality of issues and the discovery already completed, filing additional individual lawsuits would be a waste of judicial resources. Thus, we find that the superiority requirement was met. As such, the trial court did not abuse its discretion in determining that the requirements of predominance of common issues over individual ones and the superiority of the class action method have been met under Rule 42(b)(4). Because only one subparagraph is required under Rule 42(b) for certification, we need not address whether the plaintiffs established the remaining subparagraphs. Issues Four, Five, Six, Seven, and Nine are overruled.

### Trial Plan Order

In their supplemental brief, appellants contend that: (1) the trial court abused its discretion in entering its April 26, 2001 Order denying appellants' request for a hearing on their motion to reconsider certification and their objections to the plaintiffs' proposed trial plan; and (2) that the trial court abused it discretion in entering the Supplemental Class Certification Order—Trial Plan Order dated April 26, 2001. They argue that the trial court failed to conduct a rigorous analysis and merely accepted the proposed trial plan from the plaintiffs. The record, however, does not support appellants' contentions.

▮ Review of the supplemental record shows that the trial court was presented with numerous motions, letter briefings, and other filings for consideration by the trial court. There is no indication that the trial court failed to consider such filings. Nor is there any indication that the trial court merely accepted a proposed trial plan without considering the issues at hand. Moreover, there was no requirement that the trial court conduct a hearing after abatement, and our order did not mandate such action.

▮ Appellants assert that the trial plan is unmanageable because the number of individual issues is overriding. We do not find this to be the case, however, having already determined that common issues predominate over individual ones. We find that the trial court did not abuse its discretion in entering its supplemental orders. Further, after reviewing the original and supplemental record, we cannot conclude that the trial court failed to conduct a rigorous analysis before making its determination to certify the class. We therefore overrule the two supplemental issues on appeal.

### CONCLUSION

In conclusion, we find that the trial court did not abuse its discretion in order-

---

66. *Chastain,* 26 S.W.3d at 35; *Weatherly v. Deloitte & Touche,* 905 S.W.2d 642, 654–55 (Tex.App.—Houston [14th Dist.] 1995, writ dism'd w.o.j.).

ing the class certification. Therefore, we affirm the order of the trial court.