Reversed and Remanded and Opinion filed November 14, 2002









Reversed and Remanded and Opinion filed November 14, 2002.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-02-00451-CV

____________

 

WAL-MART STORES, INC. and SAM=S EAST, INC., Appellants

 

V.

 

ELENA LOPEZ, LIBERTY MORALES, CHAD
MATTHEWS, JAMES VEILLON, and ALL OTHERS SIMILARLY SITUATED, Appellees

 



 

On Appeal from the 23rd District Court

Brazoria County, Texas

Trial Court Cause No. 12326BH2000

 



 

O P I N I O N

In this interlocutory appeal, Wal-Mart Stores, Inc. and Sam’s
East, Inc. (collectively, “Wal-Mart”) appeal the trial court’s order granting
class certification to Elena Lopez, Liberty Morales, Chad Matthews, and James
Veillon, on behalf of themselves and all others similarly situated.  Because individual issues will predominate
over common issues, and the class action is not the superior method for
litigating appellees= claims, the trial court abused its discretion in granting
the class certification and, accordingly, we reverse the order and remand the
case to the trial court.  








                                                             I. 
Background

Appellees allege that due to uniform Wal-Mart policy they
were required to work through rest and meal breaks and to work “off-the-clock”
without pay.  Appellees seek to represent
a class consisting of all current and former hourly employees who were employed
by Wal-Mart and Sam’s Club in Texas after June 23, 1996.  There are 264 Wal-Mart and 61 Sam=s Club stores in Texas.  The proposed class consists of approximately
350,000 current and former employees.  

Each
applicant for employment with Wal-Mart must complete and sign an employment
application.  By signing the Wal-Mart
employment application, each applicant states his understanding that any
employment relationship with Wal-Mart is “at-will”:

[T]his application is not a contract, offer, or
promise of employment and that if hired I will be able to resign at any time
for any reason.  Likewise, the company
can terminate my employment at any time with or without cause.  I further understand that no one other than
the President of Wal-Mart Stores, Inc., or Vice President of its People
Division has the authority to enter into an employment contract or agreement
with me, . . . 

Once
an applicant has been hired by Wal-Mart, he or she is required to attend an
orientation session conducted by Wal-Mart personnel managers.  Each new employee is given an employee
handbook setting forth policies and procedures for Wal-Mart employees.  The employee handbook states the following
with regard to rest and meal breaks:

Associates will be provided break and meal periods
during their scheduled work shift. 
Associates are paid for up to two break periods per work shift.  No associate should work over six hours
without taking at least a 30-minute meal period.  Remember to clock in and out for meal
periods.

Associates should not be required nor requested to
perform work during their break and/or meal periods.








Where state law requires additional or more frequent
break/meal periods will be followed [sic].[1]

With
regard to work performed off-the-clock, the employee handbook further states:

Managing Your Time. 
This is one of your responsibilities. 
Our expectation is very clear. 
Always clock in to begin your workday and at other appropriate times;
ask your Supervisor for specific details. 
If you forget to do this, notify your Supervisor immediately so
corrections can be made.  Your hard work
is appreciated, and we want to pay you for this work.  Remember that working off the clock is not
only against Wal-Mart policyCit=s against the law. 
Always clock in when you are workingCAlways!  There are no exceptions.

Each
new employee is required to sign the following acknowledgment contained in the
employee handbook, which sets forth the employee=s understanding that the policies and
benefits explained in the employee handbook are not terms and conditions of
employment: 

This handbook is intended solely as a general
information guide to let Associates know about the current policies and programs
Wal-Mart has in place.  The policies and
benefits presented in this handbook are for your information and do not
constitute terms or conditions of employment. . . . This handbook is not a
contract.  From time to time, Wal-Mart
may determine that it needs to change some of the policies or programs in this
handbook in order to better meet the requirements of our Associates and the
Company.  If any policies or programs are
changed, modified, deleted, or supplemented, Wal-Mart will notify Associates as
soon as possible.

I acknowledge that I have received and read this
handbook as well as this Acknowledgment, and that I had the opportunity to ask
my Manager questions about both and that I fully understand the contents of
both as they relate to my employment with Wal-Mart.  I understand that the information contained
in this handbook are guidelines only, and are in no way to be interpreted as a
contract.  








Appellees allege Wal-Mart had a common oral contractual
obligation to provide rest and meal breaks and to pay its hourly employees for
all work performed, but breached that obligation through a uniform policy of
depriving employees of rest and meals breaks and forcing employees to work
off-the-clock without pay.  In its order
granting class certification, the trial court determined appellees had
satisfied all prerequisites to class certification.  Wal-Mart brings this interlocutory appeal
asserting the trial court abused its discretion in granting class
certification.  

                                                    II. 
Standard of Review

The trial court=s ruling on class certification is
reviewed for abuse of discretion.  Texas
Dep=t of Transp. v. Barrier, 40 S.W.3d 153, 156 (Tex. App.CHouston [14th Dist.] 2001, no
pet.).  The trial court abuses its
discretion when it (1) does not properly apply the law to the undisputed facts;
(2) acts arbitrarily or unreasonably; or (3) rules on factual assertions not
supported by the record.  Spera v.
Fleming, Hovenkamp & Grayson, P.C., 4 S.W.3d 805, 810 (Tex. App.CHouston [14th Dist.] 1999, no
pet.).  








While the trial court=s ruling on class certification is
subject to abuse of discretion, there is no right to proceed as a class
action.  Southwestern Ref. Co. v.
Bernal, 22 S.W.3d 425, 439 (Tex. 2000). 
Instead, the plaintiff must satisfy all requirements for certification
of the class as set forth in Rule 42 of the Texas Rules of Civil
Procedure.  Tex. R. Civ. P.
42; Ford Motor Co. v. Sheldon, 22 S.W.3d 444, 453 (Tex. 2000).  The class action must first meet the four
threshold requirements set forth in Rule 42(a): 
(1) numerosity (the class is so numerous that joinder is impracticable);
(2) commonality (there are common questions of fact and law); (3) typicality
(the representative=s claims are typical of the class); and (4) adequacy of
representation (the representative parties will protect the interests of the
class).  Tex. R. Civ. P. 42(a). 
Additionally, the class action must satisfy at least one of the four
categories found in Rule 42(b).  Tex. R. Civ. P. 42(b).  With respect to the Rule 42(b) requirement,
appellees proceeded under 42(b)(4), which provides Athe questions of law or fact common
to the members of the class predominate over any questions affecting only
individual members, and that a class action is superior to other available
methods for the fair and efficient adjudication of the controversy.@ 
Tex. R. Civ. P. 42(b)(4).




                                                                III. 
Analysis

                                                              A.  Predominance

Questions common to the class are those questions that, when
answered as to one class member, are answered as to all class members.  Union Pac. Res. Group, Inc. v. Hankins,
51 S.W.3d 741, 750 (Tex. App.CEl Paso 2001, pet. filed); Spera, 4 S.W.3d at
810.  The threshold for commonality is
not high.  Graebel/Houston Movers,
Inc. v. Chastain, 26 S.W.3d 24, 33 (Tex. App.CHouston [1st Dist.] 2000, pet. dism=d w.o.j.).  Commonality does not require that all
questions of law and fact must be identical, but only that an issue of law or
fact exists that inheres in the complaints of all class members.  Union Pac. Res. Group, Inc., 51 S.W.3d
at 750; Graebel/Houston Movers, Inc., 26 S.W.3d at 33; Spera, 4
S.W.3d at 811.  

As noted above, appellees proceeded under Rule 42(b)(4),
which requires common questions of law or fact of the class to predominate over
any questions affecting only individual members.  Tex.
R. Civ. P. 42(b)(4).  Because the
predominance requirement is far more demanding than the commonality
requirement, it acts as a check on the more flexible commonality test.  Bernal, 22 S.W.3d at 435 (quoting Amchem
Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997)).  Therefore, because the predominance
requirement is so stringent, we must consider it first.  Id. at 433; see also West
Teleservices, Inc. v. Carney, 75 S.W.3d 455, 459 n.6 (Tex. App.CSan Antonio 2001, no pet.) (stating
predominance and commonality inquiries are subsumed into one).  








Predominance is determined by identifying the substantive
issues of the case that will control the outcome of the litigation, assessing
which issues will predominate, and determining if the predominating issues are
common to the class.  Bernal, 22
S.W.3d at 434.  The test for predominance
is not whether common issues outnumber uncommon issues, but whether common or
individual issues will be the object of most of the efforts of the litigants
and the court.  Id. (quoting Central
Power & Light Co. v. City of San Juan, 962 S.W.2d 602, 610 (Tex. App.CCorpus Christi 1998, writ dism=d w.o.j.)).  AIf, after common issues are resolved,
presenting and resolving individual issues is likely to be an overwhelming or
unmanageable task for a single jury, then common issues do not predominate.@ 
Id.  Thus, a judgment in
favor of the class should settle the entire controversy and all that should
remain is for the other class members to file their proof of claim.  Id. (quoting Life Ins. Co. of the
Southwest v. Brister, 722 S.W.2d 764, 772 (Tex. App.CFort Worth 1986, no writ)).  

Rule 42(b)(4) sets forth a non-exhaustive list of factors for
guiding the court in determining the predominance requirement:  (A) the interest of members of the class in
individually controlling the prosecution or defense of separate actions; (B)
the extent and nature of any litigation concerning the controversy already
commenced by or against members of the class; (C) the desirability or
undesirability of concentrating the litigation in the particular forum; (D) the
difficulties likely to be encountered in the management of a class action.  Tex.
R. Civ. P. 42(b)(4)(A)–(D).  

                                                    1.  Class Certification Order








The trial court concluded there are Auniform policies and practices
regarding hourly employees throughout the Wal-Mart system sufficient, in the
Court=s opinion, to satisfy the commonality
requirement of Rule 42(a)(2).@  Specifically, the
trial court determined there is evidence (1) Wal-Mart=s hourly employees were hired under
similar circumstances pursuant to uniform policies and procedures adopted and
implemented by Wal-Mart on a company-wide basis; (2) Wal-Mart=s hourly employees are in the same
legal and economic position; (3) Wal-Mart has a consistent policy and practice
of managing its hourly employees and regulating their hours of work in a
uniform company-wide manner; and (4) Wal-Mart has a uniform policy for
compensating management personnel based on store profitability, which is
affected by the expense of running each store. 


Rejecting Wal-Mart=s contention that individual issues
involving contract formation will predominate over common issues, the trial
court concluded the resolution of contract formation issues will affect the
legal position of the entire class and can be resolved during the trial on the
merits.  Further with respect to Wal-Mart=s assertion that individual inquiries
as to fact situations surrounding each claim for missed breaks and
off-the-clock work would predominate over common issues, the trial court stated
it would allow the plaintiffs to present scientific evidence in the form of
statistical analysis of Wal-Mart=s records and a random survey of
current and former Wal-Mart employees. 
The trial court determined Wal-Mart=s challenge to the reliability of
such scientific data is a common issue that can be resolved during the trial on
the merits.  Thus, the trial court
ordered the case be tried in two phases with liability and aggregate damages to
the class determined by a jury in the first phase, and individual damage
recoveries determined in the second phase by the adoption of a proof of claim
form and individual hearings conducted by a special master or Asome other manageable means for the
distribution to individuals of individual damages.@ 


                                                              2.  Missed Breaks

Appellees allege Wal-Mart had a common oral contractual
obligation to provide rest and meal breaks. 
Wal-Mart contends appellees must prove the formation, existence,
content, validity, and enforceability of each individual oral contract between
Wal-Mart and each of the 350,000 class members. 
Thus, according to Wal-Mart, any attempt to prove the terms of the
contracts were Acommon@ to the class would overwhelm this case with individual
issues of Ahighly individualized evidence of
each Plaintiff=s thought processes, expectations and
negotiations with individual managers.@ 
We agree.  








The elements of written and oral contracts are the same and
must be present for a contract to be binding. 
Bank of El Paso v. T.O. Stanley Boot Co., 809 S.W.2d 279, 284
(Tex. App.CEl Paso 1991), aff=d in part, rev=d in part on other grounds, 847 S.W.2d 218 (Tex. 1992).  The following elements are required for the
formation of a binding contract:  (1) an
offer, (2) acceptance in strict compliance with the terms of the offer, (3) a
meeting of the minds, (4) each party=s consent to the terms, and (5)
execution and delivery of the contract with the intent that it be mutual and
binding.  Labor Ready Cent. III, L.P.
v. Gonzalez, 64 S.W.3d 519, 522 (Tex. App.CCorpus Christi 2001, no pet.); Komet
v. Graves, 40 S.W.3d 596, 600 (Tex. App.CSan Antonio 2001, no pet.).  

For an agreement to be enforceable, there must be a meeting
of the minds with respect to its subject matter and essential terms.  Ludlow v. DeBerry, 959 S.W.2d 265, 272
(Tex. App.CHouston [14th Dist.] 1997, no
writ).  The determination of a meeting of
the minds, and thus offer and acceptance, is based on the objective standard of
what the parties said and didCand not on their subjective state of mind.  Adams v. H & H Meat Prods., Inc.,
41 S.W.3d 762, 771 (Tex. App.CCorpus Christi 2001, no pet.); Angelou v. African Overseas
Union, 33 S.W.3d 269, 278 (Tex. App.CHouston [14th Dist.] 2000, no
pet.).  In determining mutual assent, the
court considers the communications between the parties and the acts and
circumstances surrounding those communications. 
Komet, 40 S.W.3d at 601; Angelou, 33 S.W.3d at 278. 

Wal-Mart asserts appellees= common oral contract claims raise a
number of issues that Awould elicit factually distinct responses from the 350,000
class members,@ including the identity and position
of the offeror, the class member=s belief as to the authority of the offeror
to make an offer in light of the disclaimers about contracts contained in the
employee handbook, the circumstances under which the offer was made, and the
terms and conditions of the offer.  








In Basco v. Wal-Mart Stores, Inc., a federal district
court denied class certification for a proposed class of current and former
employees employed by Wal-Mart and Sam=s Club in Louisiana on claims for
breach of contract for missed meal and rest breaks and off-the-clock work.  Basco v. Wal-Mart Stores, Inc., 216 F.
Supp. 2d 592 (E.D. La. 2002).  The
plaintiffs in Basco claimed Wal-Mart (1) entered into oral contracts
with its hourly employees at the time of hiring, agreeing to provide rest and
meal breaks and pay them for all hours worked, and (2) breached that
contractual obligation throughout its Louisiana stores through a uniform policy
requiring employees to miss rest and meal breaks and work off-the-clock.  Id. at 596–97.

Denying
class certification, the Basco court explained the plaintiffs= allegations that Wal-Mart entered
into individual oral contracts for rest and meal breaks with each of the
approximately 100,000 class members during their orientation sessions and
subsequently breached those contracts would depend on the resolution of highly
specific issues, including:  (1) whether
Wal-Mart=s employees made offers to the
plaintiffs, (2) if so, whether those offerors had apparent or actual authority
to make the offers, (3) what the conditions of the offers and terms agreed to
by the parties were, and (4) whether, and to what extent, each contract was
breached.  Id. at 602.  With respect to the plaintiffs= argument that Wal-Mart had a
system-wide policy to enter into those contracts with its employees, the court
explained: 

every Acontract@ at
issue in this case was created at a different time, by different employees, and
under different circumstances.  At trial,
each plaintiff will be required to establish the existence of a contract with
[Wal-Mart] through offer and acceptance and prove the terms of the contract and
it is possible that no two plaintiffs=
allegations concerning the formation or terms of their contract will be the
same.  

 

Id.  Thus, the plaintiffs= argument that liability issues for
their breach of contract claims against Wal-Mart would predominate over
individual damages each plaintiff would receive ignored Athe plethora of individual issues
that must be resolved before damages are considered.@ 
Id.  








As in Basco, individual issues regarding the formation
of 350,000 contracts in this case will predominate over any common issues.  Appellees claim Wal-Mart made express
contractual offers of rest and meal breaks during the orientation process.  Because each orientation session was
conducted by different Wal-Mart personnel at different stores, proof of an oral
contract with each class member will require a determination of the terms of
the contract through offer and acceptance. 
Any determination concerning a Ameeting of the minds@ necessarily requires an individual
inquiry into what each class member, as well as the Wal-Mart employee who
allegedly made the offer, said and did. 
A determination must also be made as to the authority of each Wal-Mart
manager who allegedly made such an offer and each employee=s belief regarding whether that
manager had or lacked authority to make the offer.  

Even if appellees establish Wal-Mart had 350,000 oral
contracts to provide rest and meal breaks, individual issues regarding the
alleged breach of each contract will also predominate over common issues.  Affidavits of current and former Wal-Mart
employees submitted by appellees raise individual issues.  For example, a number of employees state they
missed rest and meal breaks, but offer no explanation for why they missed their
breaks, i.e., whether store management required the employee to work
through the break or whether the employee voluntarily chose not to take a break
for personal reasons, or why no time adjustment request form was submitted to
reflect the hours worked so the employee could be appropriately compensated.[2]  








In addition to claiming an express contractual obligation for
rest and meal breaks, appellees allege the existence of an implied-in-fact
contract for rest and meal breaks. 
Appellees claim Wal-Mart made an offer of rest and meal breaks to its
employees during the orientation process and the employees accepted that offer
by working for Wal-Mart.  An
implied-in-fact contract Aarises from the acts and conduct of the parties, it being
implied from the facts and circumstances that there was a mutual intention to
contract.@ 
Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding
Co., 480 S.W.2d 607, 609 (Tex. 1972). 
A meeting of the minds is an essential element of an implied-in-fact
contract.  Texas Ass=n of Counties County Gov’t Risk Mgmt. Pool v. Matagorda County, 52 S.W.3d 128, 133 (Tex.
2000).  In an express contract, mutual
agreement is expressly stated; in an implied contract, mutual agreement must be
inferred from the circumstances of the transaction.  Buxani v. Nussbaum, 940 S.W.2d 350,
352 (Tex. App.CSan Antonio 1997, no writ); T.O.
Stanley Boot Co., 809 S.W.2d at 284. 
The court Amust look to the conduct of the parties to determine the
terms of the contract on which the minds of the parties met.@ 
Williford Energy Co. v. Submergible Cable Servs., Inc., 895
S.W.2d 379, 385 (Tex. App.CAmarillo 1994, no writ). 
The conduct and circumstances surrounding the transaction are to be
viewed from a reasonable person=s interpretation at that particular point in time.  T.O. Stanley Boot Co., 809 S.W.2d at
284 (citing Haws & Garrett Gen. Contractors, Inc., 480 S.W.2d at
609).  

Appellees contend the method of offer, i.e., via the
new-hire orientation, and the method of acceptance, i.e., working for
Wal-Mart, are the same for the entire class and predominate over any individual
issues regarding contract formation. 
Determining the existence of an implied-in-fact contract, however,
involves consideration of the conduct of the parties and the circumstances
surrounding the alleged contract.  That
inquiry will necessarily involve the same individual issues as in the formation
of an express contract such as the terms and conditions of the offer, whether
there was a meeting of the minds, and the identity and authority of the
Wal-Mart employee who made the offer, as well as whether there was a breach of
the alleged contract.  We find individual
issues concerning the formation of 350,000 contracts and any subsequent breach
by Wal-Mart will predominate over any common issues.

                                                         3.  Off-the-Clock Work








Wal-Mart also argues that because of the individualized
nature of appellees= claims for off-the-clock work, common issues do not
predominate over individual issues. 
Appellees submitted affidavits of current and former Wal-Mart employees
stating they had worked off-the-clock and were not paid for such work.  Some employees claim that after clocking out,
they sometimes had to wait on management to unlock the exit doors so they could
leave the premises;  others claimed they
attended employee meetings before clocking in. 
Although some employees state a manager Aasked@ or Arequired@ them to perform tasks after clocking
out, others do not state why they were working off-the-clock.  Most employees do not indicate whether they
submitted time adjustment request forms so they could be paid for the
additional time worked.  Furthermore, not
all employees state whether store management knew they were working
off-the-clock.[3]  

In this case, individual inquiry into each class member=s claim for off-the-clock work is
required.  Wal-Mart has the right to
inquire into the validity of each claim with regard to the authority of the
manager to instruct the employee to work off-the-clock, store management=s knowledge of the employee=s having performed work
off-the-clock, whether the employee, in fact, performed any work off-the-clock,
the reason the employee did not submit a time adjustment request form, and
whether the employee has a unique animus towards Wal-Mart causing that employee
to fabricate his claim.[4]  

 








In an attempt to circumvent the individual nature of their
off-the-clock work claims, appellees characterize their claims as a Apattern-or-practice@ case similar to employment
discrimination cases covered by Title VII of the Civil Rights Act of 1964.  42 U.S.C. ' 2000e.  Appellees contend in a pattern-or-practice
case they are not required to offer evidence that each person for whom they
will ultimately seek relief was a victim of Wal-Mart=s policy; instead, they only need
establish such a policy existed.  See
International Brotherhood of Teamsters v. United States, 431 U.S. 324, 360
(1977) (holding, in employment discrimination case under Title VII, plaintiff
is not required in initial liability stage to offer evidence that each person
who will ultimately seek relief was a victim of employer=s discriminatory policy).  The burden then shifts to the employer to
defeat the prima facie showing of pattern-or-practice.  Id. 
If an employer fails to rebut the prima facie case, the trial court may
conclude a violation has occurred and determine the appropriate remedy.  Id. at 361.  If the plaintiffs seek individual relief for
the discriminatory practice, the trial court will conduct additional
proceedings after the liability stage of the trial to determine the scope of
individual relief.  Id.  








This, however, is not a discrimination case and appellees
have failed to cite any law applying Title VII principles to a suit involving
claims for breach of contract.  In any
event, even if this were a discrimination case, appellees must still satisfy
all prerequisites to class certification. 
Title VII authorizes the Equal Employment Opportunity Commission (AEEOC@) to sue in its own name to secure
relief for individuals aggrieved by discriminatory practices forbidden by the
Act.  General Tel. Co. v. Southwest v.
Falcon, 457 U.S. 147, 155–56 (1982). 
While it is not necessary for the EEOC to comply with the strictures of
Rule 23 of the Federal Rules of Civil Procedure,[5]
ATitle VII, however, contains no
special authorization for class suits maintained by private parties.@ 
Id. at 156.  Rather, an
individual seeking to maintain a class action under Title VII must satisfy the
prerequisites of class certification.  Id.  Therefore, the assertion that Wal-Mart
engaged in a pattern or practice of forcing its employees to work off-the-clock
does not relieve appellees of their burden to establish all prerequisites for
maintaining a class action.  

Appellees also rely on the Fair Labor Standards Act (AFLSA@) to avoid the individual nature of
their claims.  29 U.S.C. ' 201 et seq.  According to appellees, in a case such as
this, where Wal-Mart has not kept accurate employment records, the FLSA
provides an evidentiary framework under which they may prove their wage
case.  Appellees contend each class
member must prove that he in fact performed work for Wal-Mart for which he was
not compensated, and produce sufficient evidence to show the amount and extent
of that work as a matter of just and reasonable inference.  See Anderson v. Mt. Clemens Pottery Co.,
328 U.S. 680, 687 (1946).  The burden
would then shift to Wal-Mart to come forward with evidence of the precise
amount of the work performed or to negate the reasonableness of the inference
to be drawn from the employee=s evidence.  Id.
at 687–88.  If Wal-Mart fails to produce
such evidence, the court may award damages to the employee, Aeven though the result may be only
approximate.@ 
Id.  Appellees argue this
same evidentiary framework applies to this case.  Appellees, however, never raised the FLSA in
the trial court and, therefore, any reliance on the FLSA to affirm the granting
of class certification is waived on appeal. 
We find individual issues concerning the circumstances surrounding each
class member=s claim for off-the-clock work will
predominate over any common issues.[6]  

                                                             B. 
Superiority








In addition to predominance, Rule
42(b)(4) requires the class action to be superior to other available methods
for the fair and efficient adjudication of the controversy.  Tex.
R. Civ. P. 42(b)(4).  Appellees
intend to establish their claims for missed breaks and off-the-clock work with
the presentation of Astatistical analysis of Wal-Mart records and a random survey
of the class of current and former Wal-Mart employees.@ 
Appellees explain statistical evidence will be used to prove that many
breaks were missed and to provide an estimate of the total amount of missed
break time as a matter of just and reasonable inference; while a random survey
will be used to determine the average number of hours per week of off-the-clock
work for each class member.  

Wal-Mart maintains that with the use of such evidence,
appellees Awill prove their case through
anonymous, unsworn hearsay testimony from witnesses testifying outside the
presence of a jury who are not subject to cross-examination and who have a
direct financial incentive to manufacture or embellish their claims.@ 
Appellees, on the other hand, argue the trial plan does not violate
Wal-Mart=s due process rights because a jury
will determine Wal-Mart=s liability to the entire class and the aggregate amount of
damages suffered by the entire class in a single verdict; therefore, Wal-Mart=s right to have only one jury pass on
a common issue of fact will be satisfied at a trial on the merits.  Appellees further contend that once liability
and damages have been determined in the aggregate, Athe parties will still retain some
due process rights to a fair distribution of damage awards to individual class
members.@[7] 

Appellees, however, ignore the fact that such statistical
evidence will preclude any individual inquiry in the presence of the jury
regarding the formation of each alleged contract or the varied circumstances
surrounding each employee=s missed breaks or off-the-clock work when determining
Wal-Mart=s liability for any alleged breach of
each contract.  Nor will Wal-Mart be able
to question each employee as to individual issues such the number of breaks
missed, amount of time worked off-the-clock, or amount of wages in front of the
jury.[8]  

The Texas Supreme Court has cautioned that although the class
action is intended to advance judicial economy by trying claims together that
lend themselves to collective treatment, A[i]t is not meant to alter the
parties= burdens of proof, right to a jury
trial, or the substantive prerequisites to recovery . . .@ 
Bernal, 22 S.W.3d at 437; accord Cimino v. Raymark Indus.,
Inc., 151 F.3d 297, 312 (5th Cir. 1998) (A[T]he applicability of the Seventh
Amendment is not altered simply because the case is [a] . . . class action.@). 
Basic to the right to a fair trial is the opportunity to adequately and
vigorously present any material claims and defenses.  Id. 
Under the trial plan any defenses to contract formation or breach of
contract that Wal-Mart intends to raise will not be considered by the jury in
its determination of liability and aggregate damages.  

Finally, appellees claim they have met the superiority
requirement on the ground that class actions are intended to be a
cost-effective method of litigating Anegative-value@ claims.  Although recognizing it may not be
economically feasible to pursue some claims outside a class action, Bernal
stressed there is no right to litigate a claim as a class action; rather the
trial court may certify a class action only if the plaintiffs satisfy all
requirements of Rule 42.  Bernal,
22 S.W.3d at 439.  Because the trial plan
will not allow a determination of Wal-Mart=s liability and damages as to each
employee, thereby violating Wal-Mart=s right to a trial before a jury, it
is not a superior method to litigate appellees= claims for missed breaks and
off-the-clock work.  








Claimants, however, can seek relief for unpaid wages through
the administrative process provided in Chapter 61 of the Texas Labor Code.  See Tex.
Lab. Code Ann. ' 61.051(a) (Vernon 1996) (APayday Law@). 
Indeed, the objective of the Payday Law is to deter employers from
withholding wages by providing claimants with an avenue for the enforcement of
wage claims, which are often too small to justify the expense of a civil
lawsuit.  Holmans v. Transource
Polymers, Inc., 914 S.W.2d 189, 192 (Tex. App.CFort Worth 1995, writ denied).  Appellees argue the Payday Law is not a
superior method because it (1) has a 180-day statute of limitations for filing
a claim with the Texas Workforce Commission (ATWC@), and (2) provides for de novo
review of the TWC=s final decision.  See
Tex. Lab. Code Ann. '' 61.051(c), 61.062(e).  Under Bernal, Wal-Mart=s right to have a jury hear its
defenses to appellees claims is not abridged merely because some claims may be
barred by the statute of limitations or subject to trial de novo in the trial
court.  

                                                             IV. 
Conclusion

Because individual issues will predominate over any common
issues, and class certification is not the superior method for litigating
appellees= claims, the trial court abused its
discretion in granting class certification. 
Therefore, the trial court=s class certification order is
reversed and the case is remanded to the trial court for further proceedings
consistent with this opinion.  

 

 

 

/s/        J. Harvey Hudson

Justice

 

 

 

Judgment rendered
and Opinion filed November 14, 2002.

Panel consists of
Chief Justice Brister and Justices Hudson and Fowler.

Publish C Tex.
R. App. P. 47.3(b).

 











[1]  Rest breaks
are paid, while meal breaks are unpaid.  





[2]  Wal-Mart
submitted affidavit testimony from employees who state whether they take a rest
break or if they take a shorter meal break is of their own choosing.  Some employees state if they are called back
to work before their rest break is over they can finish the break at a later
time.  If they are called back to work
before their meal break is over, they can clock back in and are paid for that
work or they can submit a time adjustment request form to reflect the extra
time worked.  





[3]  Wal-Mart
presented affidavits from employees who stated they understand Wal-Mart policy
prohibits off-the-clock work, they have never been asked to work off-the-clock
by any Wal-Mart manager, supervisor, or employee, and they understood that if
their time is entered incorrectly, they can request a change by submitting a
time adjustment request form to a manager. 
A few employees stated they voluntarily took work home on occasion, but
reported all hours worked and were paid for that work.  Wal-Mart also submitted affidavits from
managers who stated that if they learn of any work done off-the-clock, they
require the employee to submit that time for payment and remind the employee
that off-the-clock work is prohibited.  





[4]  The Basco
court similarly determined individual issues arising from the Amyriad possibilities that could be offered to explain
why any one of the plaintiffs worked off the clock@ would predominate over common issues.  Basco, 216 F. Supp. 2d at 603; see
also Petty v. Wal-Mart Stores, Inc., 148 Ohio App. 3d 348, 356, 773 N.E.2d
576, 582 (Ohio App. 2d 2002) (finding issues were individual as to each
plaintiff because of various circumstances under which employees worked
off-the-clock and questions of management=s
knowledge of, and condoning, plaintiffs= working
off-the-clock).





[5]  Rule 42 of the
Texas Rules of Civil Procedure is modeled after Rule 23 of the Federal Rules of
Civil Procedure.  Bernal, 22
S.W.3d at 433.  





[6]  Appellees cite
authority from other jurisdictions in which class certification was granted in
wage cases.  See, e.g., De Asencio v.
Tyson Foods, Inc., No. 00-CV-4294, 2002 WL 1585580 (E.D. Pa. July 17,
2002); Trotter v. Perdue Farms, Inc., No. 99-893, 2002 U.S. Dist. LEXIS
13212 (Del. Aug. 16, 2001).  Neither case
cited by appellees is applicable here. 
In De Asencio, the court determined common issues would
predominate over individuals issues, but did not address any potential defenses
that the defendant might raise.  De
Asencio, 2002 WL 1585580, at *3.  In Trotter,
predominance was not at issue.  Trotter,
2001 U.S. Dist. LEXIS 13212, at *3-4.  





[7]  At one point,
appellees state the statistical evidence will not be used to establish Wal-Mart=s liability, but, instead, will be used only to establish
aggregate damages.  Contradicting
themselves, appellees also state they Aintend
to use representational testimony, documentary evidence, and statistical
evidence to prove Wal-Mart=s liability to the entire class for off-the-clock work
and missed breaks.@





[8]  See Basco,
216 F. Supp. 2d at 604 (rejecting plaintiffs=
proposed use of statistics to establish breach of contract action or amount of
damages); Petty, 148 Ohio App. 3d at 356, 773 N.E.2d at 582 (observing
because damages will be highly individualized, there is no acceptable method of
computing damages on class-wide basis).