Alfred C. GLASSELL, Jr., Thomas P. Jacomini, Joan J. Crosswell, Edward H. Baird, John B. Baird, III, Richard M. Baird, Dixie Mckenzie Held, Mary Mclean Obering, Tamara L. Dyer, Alfred C. Glassell, III, and Alfred C. Glassell III 1972 Trust, Appellants,

v.

J. Ralph ELLIS, Jr., Appellee.

No. 06–97–00047–CV.

Court of Appeals of Texas,
Texarkana.

Submitted Aug. 28, 1997.

Decided Oct. 23, 1997.

Rehearing Overruled Dec. 2, 1997.

Thad T. Dameris, Charles W. Schwartz, Christopher W. Byrd, Vinson & Elkins, Houston, Grover M. Russell, Wheeler & Russell, Center, for appellants.

Richard D. Pullman, Larry J. Bridgefarmer, Laura S. Spangler, Robert B. Gilbreath, K. Mark Vincent, Vial, Hamilton, Koch and Knox, Dallas, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

GRANT, Justice.

This is an accelerated appeal from an interlocutory order certifying a class action in an oil and gas case involving allegations that oilfield operator Alfred Glassell breached the implied covenants to prevent drainage and to reasonably develop.

In points of error, Glassell and other working interest owners appeal the trial court's order that certified a class under Texas Rule of Civil Procedure 42 and that appointed J. Ralph Ellis, a royalty interest owner, as the class representative.

This case features a class, which consists of all royalty interest owners in the Dunaway Unit since 1970, and their relationship with several adjacent tracts of land. The Dunaway Unit was created in 1943 and is a pooled, 1,992–acre unit comprised of sixteen separate oil and gas leases. The Dunaway Unit and several of the adjoining units, including the Ellis Unit, produce from the same reservoirs, the Cotton Valley and Travis Peak formations. Numerous wells drilled on the adjoining tracts that produce from those reservoirs are located in close proximity to the Dunaway Unit boundary. Fourteen wells have been drilled on the Dunaway Unit since 1943, leaving approximately 890 acres on that unit barren of any wells, including any wells to offset those wells drilled on the nearby tracts. One well has been drilled on the Ellis Unit.

The appellants, including Glassell, are the lessees of the Dunaway Unit. The lessees hired Glassell to act as the operator of that unit. Glassell owns, or recently owned, tracts located adjacent to the Dunaway Unit. Glassell is also the lessee of the Ellis Unit.

The 106 plaintiffs, including Ellis, are the current royalty interest owners in the Dunaway Unit. Approximately 29 of the 106 members also own a royalty interest in one or more of the adjoining units that also produce from the same two formations as the Dunaway Unit.

At the class certification hearing, Ellis contended that Glassell failed to drill enough wells on the Dunaway Unit and allowed drainage from the wells on the adjoining tracts. He also asserted that because Glassell and other lessees either own, or recently owned, producing interests in the adjoining tracts, Glassell failed to reasonably develop the Dunaway Unit, speculating that profit would be higher by not developing the Dunaway Unit.

## STANDARD OF REVIEW

In reviewing a class certification order, the reviewing court applies an abuse of discretion standard,[1] viewing the evidence in a light most favorable to the trial court's action and indulging in every presumption favoring that action.[2] A trial court's discretion is abused if it has acted arbitrarily, unreasonably, or without reference to any guiding principles.[3] The trial court has

1. *St. Louis Southwestern Ry. Co. v. Voluntary Purchasing Groups, Inc.*, 929 S.W.2d 25, 29 (Tex. App.—Texarkana 1996, no writ).

2. *Reserve Life Ins. Co. v. Kirkland*, 917 S.W.2d 836, 839 (Tex.App.—Houston [14th Dist.] 1996, no writ).

3. *Downer v. Aquamarine Operators, Inc.* 701 S.W.2d 238, 241–42 (Tex.1985).

broad discretion in determining whether a suit should be maintained as a class action.[4] The plaintiff has the burden to show to the trial court that a class action can be maintained under Rule 42[5] and show some facts to support certification.[6] Before a class can be certified, the plaintiff must satisfy four requirements of Rule 42(a), numerosity, commonality, typicality, and adequacy of representation, and fulfill one of the subparagraphs of Rule 42(b).[7] In the present case, the trial court found that a class action was maintainable because Rule 42(a) requisites existed, because questions of law or fact common to the class members predominated over questions affecting only individual members, and because a class action was superior to other available methods of adjudication.[8]

## ADEQUACY OF REPRESENTATION AND TYPICALITY

Glassell asserts that the court erred in certifying the class because Ellis failed to establish all requirements of Rule 42(a), specifically (1) the adequacy of representation requirement, because both Ellis and class counsel have economic interests antagonistic to the class, and (2) the typicality requirement, because Ellis's and certain other class members' economic interests are antagonistic to the rest of the class. Glassell also asserts that the court erred in certifying a class because it violated the due course of law clause and due process clause of the state and federal constitutions.

**4.** *Microsoft v. Manning,* 914 S.W.2d 602, 607 (Tex.App.—Texarkana 1995, writ dism'd).

**5.** *St. Louis Southwestern Ry.,* 929 S.W.2d at 30.

**6.** *Life Ins. Co. of Southwest v. Brister,* 722 S.W.2d 764, 772 (Tex.App.—Fort Worth 1986, no writ).

**7.** *Health & Tennis Corp. v. Jackson,* 928 S.W.2d 583, 587 (Tex.App.—San Antonio 1996, writ dism'd w.o.j.).

**8.** *See* Tex.R. Civ. P. 42; *Microsoft,* 914 S.W.2d at 606–07.

**9.** *Cedar Crest Funeral Home, Inc. v. Lashley,* 889 S.W.2d 325, 329 (Tex.App.—Dallas 1993, no writ).

**10.** *See Health & Tennis Corp.,* 928 S.W.2d at 589 (expressly declining to adopt federal standard relied upon by appellant because of ample Texas

## A. Adequacy of Representation

Texas Rule of Civil Procedure 42 is patterned after Federal Rule of Civil Procedure 23.[9] Decisions interpreting the federal rule, upon which Glassell heavily relies, are persuasive authority, and apply a more stringent standard than does Texas law.[10] Adequacy of representation is a fact question and must be determined based on the individual circumstances of each case.[11] Its determination is made at the sound discretion of the court.[12] Factors affecting its determination include: (1) adequacy of counsel, (2) potential for conflicts of interest, (3) personal integrity of the plaintiffs, (4) whether the class is unmanageable because of geographical limitations, (5) whether the plaintiffs can afford to finance the class action, and (6) the representative's familiarity with the litigation and his or her belief in the legitimacy of the grievance.[13] The two adequacy of representation requirements are: (1) the absence of antagonism between the representative and the class members, and (2) the assurance that through class counsel, the representative will vigorously prosecute the class's claims.[14]

In the present case, Glassell focuses primarily on conflict of interest. A conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.[15] In *Horton v. Goose Creek Indep. Sch. Dist.,*[16] the Fifth Circuit Court of

law available governing adequacy of class representative issue).

**11.** *Weatherly v. Deloitte & Touche,* 905 S.W.2d 642, 651 (Tex.App.—Houston [14th Dist.] 1995, writ dism'd w.o.j.).

**12.** *Id.*

**13.** *Id.*

**14.** *Health & Tennis Corp.,* 928 S.W.2d at 589; *Adams v. Reagan,* 791 S.W.2d 284, 291 (Tex. App.—Fort Worth 1990, no writ).

**15.** *Forsyth v. Lake LBJ Inv. Corp.,* 903 S.W.2d 146, 151 (Tex.App.—Austin 1995, writ dism'd w.o.j.).

**16.** 690 F.2d 470 (5th Cir.1982).

Appeals reversed a denial of a class certification, finding that class certification *may* be denied for lack of adequate representation if there is a *possibility* of significant disagreement within the class.[17] *Horton* is distinguishable from *Forsyth v. Lake LBJ Investment Corp.*,[18] a Texas case which found a conflict of interest was present because actual antagonism existed, not the mere possibility of disagreement.[19]

Unlike *Forsyth*, where a majority of the class members openly opposed the class representative's position, there is no actual intra-class antagonism in the instant case, merely the possibility that it will exist. Additionally, the *Horton* court noted that class actions cannot be forbidden in every case in which class members disagree.[20] No Dunaway Unit royalty interest owners have intervened in this suit or voiced any dissenting opinion.[21] The possibility that absent class members will represent any dissenting views within the class is but one factor to be weighed in determining adequacy of representation.[22]

First, Glassell asserts that Ellis is an inadequate class representative because Ellis owns 100 percent of the Ellis Unit, but only owns 12.9 percent of the Dunaway Unit. Because of the disparate percentages of ownership, Glassell asserts that Ellis profits more when he produces on the Ellis Unit, thereby draining the Dunaway Unit and taking away profits from other Dunaway royalty interest owners, which creates a conflict of interest between Ellis and the class. However, disparate percentages of ownership does not necessarily constitute mirroring disparate profits. The Dunaway Unit is not only much larger in size than the Ellis Unit, but it also has thirteen more wells and hundreds of more acres available for additional drilling. Ellis's overall mineral interest in the Duna-

way Unit is more than his mineral interest in the Ellis Unit.

Also, Glassell asserts that despite Ellis's knowledge that producing on the Ellis Unit probably drains the Dunaway Unit, Ellis testified at the class certification hearing that he wanted Glassell to drill more wells on the Ellis Unit. However, Ellis also testified that he wanted Glassell to offset the only well located on the Ellis Unit. Ellis further testified that if the Ellis Unit is draining the Dunaway Unit, he would ask the court to order Glassell to offset that well. Arguably, Ellis's efforts in having both tracts developed do not constitute a conflict, but an attempt to spur *any* development.

Ellis asserts that no conflict exists between him and other class members because, as a royalty interest owner, he is only entitled to a share of the gross production and therefore has no control over the location of the drilled wells or their consequential draining potential.[23] However, Ellis is seeking additional development by way of an offset well on his own property. But this is not necessarily inconsistent with the need for offset wells in the Dunaway Unit, and since his appointment, Ellis has not been shown to allow his personal interest in an adjoining tract to override or influence his acts as representative of the class.

Second, Glassell contends that Ellis is an inadequate class representative because Ellis seeks to misuse the class action procedure as a blackmailing settlement technique to pressure Glassell into further developing the Ellis Unit. To support this assertion, Glassell points to Ellis's deposition testimony, wherein Ellis had previously asked Glassell to release to him an undeveloped area of the Dunaway Unit, the area now known as the Ellis Unit, so that Ellis could develop it,

17. *Horton*, 690 F.2d at 485–86.

18. *Forsyth*, 903 S.W.2d 146.

19. *Id.* at 151.

20. *Horton*, 690 F.2d at 486 (citing *Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940)).

21. *See East Texas Motor Freight v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977)(illustrating hard evidence where local union members, which included class members, had voted against relief sought by plaintiffs).

22. *Forsyth*, 903 S.W.2d at 151–52.

23. *See Bagby v. Bredthauer*, 627 S.W.2d 190, 194 (Tex.App.—Austin 1981, no writ).

but Glassell did not respond to Ellis's request until Ellis threatened litigation. Glassell asserts that because Ellis attempts to use class certification to strengthen his bargaining position concerning the development of the Ellis Unit, he attempts to advance his own individual interest on the Ellis Unit, which is potentially harmful to the other class members' interests, thereby rendering him an inadequate class representative.

However, Ellis stated at the class certification hearing that the broken promises made by Glassell regarding the Ellis Unit were just one part of why Ellis brought suit against Glassell; the other part was because Glassell had broken his promise to drill two wells on the Dunaway Unit. Regardless of any alleged broken promises, neither a plaintiff's personality nor motive is determinative of whether the representative will provide vigorous advocacy for the class.[24] If, as the class representative, Ellis betrays the class by using his position for personal gain over the interest of the class, he can be removed by the trial judge and be subject to liability for damages for violating his fiduciary duties to the class. But, since his appointment as class representative, no violations of his fiduciary duties have been alleged.

Third, Glassell asserts that a conflict between Ellis and the class arises because the Rule of Capture precludes the other Dunaway Unit royalty interest owners from successfully suing Ellis in his capacity as the Ellis Unit royalty owner for any gas the Ellis Unit captures from the Dunaway Unit. However, the Rule of Capture is a doctrine of nonliability for drainage.[25] The remedy for drainage is the drilling of offset wells, which is the goal of this litigation.

Fourth, Glassell asserts that Ellis is not a member of the class and, therefore, is an inadequate representative because the class is maintained on behalf of "[a]ll persons and entities who owned royalty or overriding royalty interests in the Dunaway Unit since January 1, 1970," and Ellis has only owned an interest for three of the twenty-seven years. To support his argument, Glassell points to a United States Supreme Court case that cites the Fifth Circuit's holding that certain minority city drivers were ineligible to represent a class of minority line drivers because they were not qualified to be line drivers at all, and therefore, they would have suffered no discriminatory injury that the class suffered.[26] The present case differs dramatically because both Ellis and the other class members are royalty interest owners in the Dunaway Unit, and their interests as royalty interest owners are the same, regardless of the duration of time each class member has spent as a royalty interest owner. Further, there is no explanation why class members who acquired their interest more recently than other class members would necessarily have different interests such that it should disqualify that member to act as the class representative.

Fifth, Glassell contends that class counsel has an impermissible conflict of interest with absent class members because he had represented Ellis individually for twenty years. He also asserts that because of the conflict of interest between certain class members who also have royalty ownership interests in other neighboring tracts and those class members who have a royalty interest in the Dunaway Unit only, class counsel would breach his fiduciary duty to advance the interests of both groups as one class.

The fair and adequate representation requirement includes both class representatives and class counsel.[27] A district court cannot certify a class without determin-

**24.** *See Denny v. Carey,* 73 F.R.D. 654, 657 (E.D.Pa.1977)(holding that alleged motives do not disqualify class representative, but stating that should it later appear otherwise, there would be no hesitation to amend class certification).

**25.** *Bender v. Brooks,* 103 Tex. 329, 127 S.W. 168, 168–69 (1910).

**26.** *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 156, 102 S.Ct. 2364, 2369–70, 72 L.Ed.2d 740 (1982).

**27.** *In re Asbestos Litig.,* 90 F.3d 963, 977 (5th Cir.1996), *abrogated sub nom. Amchem Prods., Inc. v. Windsor,* 521 U.S. ——, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

ing that class counsel is sufficiently qualified and experienced to vigorously prosecute the action.[28] Class counsel must serve the interests of the *entire* class [29] and will fail to meet this requirement if a conflict of interest exists.[30] It is the clients who make the complaint that their attorney has a conflict of interest.[31] That type of complaint should be addressed by disciplinary action, not on appeal concerning class certification.[32]

As in *Adams v. Reagan*,[33] Glassell supports his argument with disciplinary rules citations; however, disciplinary rule violations do not create a presumption that a legal duty to a client has been breached.[34] Because the purpose of disciplinary rules can be abused when they are invoked by opposing parties as procedural weapons, the *Adams* court found that the appellant had no standing to complain of class counsel's possible conflict of interest because the appellant was not represented by class counsel.[35] Therefore, despite his argument, Glassell lacks standing to complain about class counsel's potential conflict of interest with absent class members because Glassell is not represented by class counsel.[36]

Even if it is later shown that either Ellis or class counsel cannot adequately protect the interests of the class, the court can always decertify the class at that time.[37]

### B. Typicality

Typicality requires that the class representative's interests and injuries be consistent with those of the class members.[38] Glassell asserts that because some class members may profit from drainage of the Dunaway Unit, their claims are not typical of the claims of class members who do not profit. However, typicality is satisfied when the evidence shows that the class representative's claims have the same essential characteristics as those of the class as a whole.[39] Claims need not be identical or perfectly coextensive, only substantially similar.[40] Ellis need only show that his claims arise from the same legal theory as those that arise for the class members,[41] namely breach of the implied covenants on the Dunaway Unit.

Glassell also asserts that the entire class, with the exception of Ellis, is subject in part to a statute of limitations affirmative defense, and this difference destroys typicality. However, in the fraud case of *Dresser Industries, Inc. v. Snell*,[42] the court held that differing defenses with varying impacts on different class members does not destroy typicality because "a common thread of deceit runs through all alleged claims."[43] The court held that the overall fraud scheme alleged by the plaintiffs was sufficient to support typicality.[44]

Whether representation is adequate is a fact question.[45] The trial court's determination is based on the circumstances of each case and will not be disturbed, absent an abuse of discretion.[46] Arguably, the trial

28. *See id.; Employers Cas. Co. v. Texas Ass'n*, 886 S.W.2d 470, 475 (Tex. App—Austin 1994, writ dism'd w.o.j.); *see also Adams*, 791 S.W.2d 284.

29. *Georgine v. Amchem Prod., Inc.*, 83 F.3d 610, 630 (3rd Cir.1996).

30. *Asbestos Litig.*, 90 F.3d at 977.

31. *Adams*, 791 S.W.2d at 291.

32. *Id.*

33. 791 S.W.2d 284.

34. *See id.* at 291.

35. *See id.*

36. *See id.*

37. *Weatherly*, 905 S.W.2d at 652.

38. *East Texas Motor Freight*, 431 U.S. at 403, 97 S.Ct. at 1896–97.

39. *Health & Tennis Corp.*, 928 S.W.2d at 588.

40. *Id.*

41. *See Adams*, 791 S.W.2d at 290.

42. 847 S.W.2d 367 (Tex.App.—El Paso 1993, no writ).

43. *Id.* at 373.

44. *Id.*

45. *Health & Tennis Corp.*, 928 S.W.2d at 589.

46. *Id.*

court did not abuse its discretion in choosing Ellis as class representative. The record supports the court's finding that notwithstanding any interest in an adjoining tract, Ellis's royalty interests in the Dunaway Unit are wholly consistent with the interests of the other class members because all royalty interest owners shared questions of law and fact, including:

(1) whether Glassell reasonably developed the Dunaway Unit;

(2) whether Glassell failed to protect from drainage by wells on neighboring tracts;

(3) whether Glassell acted as a reasonably prudent operator;

(4) whether Glassell's breach of the implied covenant to prevent drainage by not drilling offset wells proximately caused damage to the class and, if so, the amount of damages; and

(5) whether the class is entitled to attorneys' fees against Glassell, and, if so, the amount of those fees.

■ Recognizing that the court should err in favor of certification[47] and finding no clear abuse of the trial court's broad discretion in finding typicality or in appointing Ellis as the class representative, the first point of error is overruled.

## COMMON QUESTIONS PREDOMINATE and CLASS IS DEFINED

Glassell asserts that, under Rule 42(b)(4), Ellis did not establish that questions of law and fact common to the members of the class predominated over questions affecting individual class members. He also contends that certifying a class under this circumstance violates state and federal due process.

■ Glassell asserts that common questions do not predominate because the limitations issue addressed above necessarily makes the questions of law and fact individual. For the reason discussed earlier, this issue is not a valid consideration when deciding whether a trial court abused its discretion in certifying a class or appointing a representative.

■ Glassell next asserts that common questions do not predominate because the issue of whether Glassell has breached implied covenants will vary depending on the status of development or the existence of drainage at certain points in time. However, the test for evaluating predominance is "not whether the common issues outnumber the individual issues, but instead whether common or individual issues will be the object of most of the efforts of the litigants and the court."[48] In the present case, the object of most of the efforts of the parties and the court involve the rights of royalty interest owners who assert that a lessee has breached implied covenants, which is an issue common to the class.

■ Glassell also contends that Ellis has provided no evidence to support the class's definition that includes all royalty interest owners since 1970; all evidence includes current owners only. Additionally, Glassell asserts that Ellis has shown no listing of the names of all owners since 1970, no explanation of how former owners will be provided notice, and no evidence of any rational basis for extending the class to 1970. Ellis states that Glassell became a lessee of the Dunaway Unit in 1970; however, Ellis has not pointed to any place in the record that states this fact. Glassell asserts that because Ellis has failed to provide this evidence, he has not sustained his burden of proving these class action elements pursuant to Rule 42(b).

■ However, at the certification stage, class proponents are generally not required to make an extensive evidentiary showing in support of their motion for class certification.[49] At the hearing, Ellis presented tax records identifying the current royalty interest owners in the Dunaway Unit who comprise the class as it is currently defined. While he may have also provided tax records identifying previous interest owners who spanned the same time frame in which Glas-

---

47. *Horton,* 690 F.2d at 485.

48. *Brister,* 722 S.W.2d at 772.

49. *Morgan v. Deere Credit, Inc.,* 889 S.W.2d 360, 365 (Tex.App.—Houston [14th Dist.] 1994, no writ).

sell was the lessee, it was not necessary for him to do so because "the class does not have to be so ascertainable that every potential member can be specifically identified at the commencement of the action, the description of the class must be sufficiently definite so that it is administratively feasible for the court to ascertain whether a particular individual is a member." [50] Further, even if the class is defined inappropriately at the time of the certification hearing, the trial court can alter the class definition later if necessary.[51] The second point of error is overruled.

Because there has been no showing that the trial court acted without reference to Rule 42 or other principles, nor did it act arbitrarily or unreasonably, the trial court did not abuse its discretion in certifying the class or in granting Ellis as the class representative.

The order of the trial court is affirmed.

---

**50.** *Joseph v. General Motors Corp.*, 109 F.R.D. 635, 639 (D.Colo.1986).

**51.** *See Brister*, 722 S.W.2d at 774–75 (adding that trial court has duty of monitoring its class deci-

sions and "must define, redefine, subclass, and decertify as appropriate in response to the progression of the case").