In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00050-CR
______________________________

JERMAINE EASTER, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee

                                              

On Appeal from the 102nd Judicial District Court
Bowie County, Texas
Trial Court No. 04F0537-102

                                                 

Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION
 
            Jermaine Easter appeals his conviction for capital murder.

 Finding the State's witness Danny
Goodson was not an accomplice, either as a matter of law or fact, and that Section 7.02(b) of the
Texas Penal Code does not apply, we affirm Easter's conviction. 
Factual Background
            Warren Earl Murphy was reported missing by his family on or about July 10, 2001. Murphy's
friend, Rob Stevens, was with him the night of July 6, 2001. Murphy had a conversation with Easter,
codefendant Jason Jackson, and Prince Long. Following that conversation, Stevens saw Murphy
engage in another conversation with the same three men, about forty minutes later. Stevens was on
a street one block away from Murphy and the three individuals, and Stevens could not see Murphy. 
He did hear Murphy arguing with someone and heard the sound of Murphy being struck by someone. 
Stevens said he would recognize Jackson's car if he saw it, but the record is not clear whether
Stevens actually saw the car. Stevens testified he tried to walk to where he heard Murphy's voice,
but Easter prevented him, and told Stevens to turn around and leave. Stevens further said he heard
sounds from a vehicle of "bumping and doors closing" and of a person trying to escape from the
vehicle. Stevens said he heard this while standing behind a car, when Murphy was a distance away
in a field. 
            Long, who was fifteen years old at the time these events occurred, testified for the State. 
According to Long, Easter, Jackson (cousin to Long), and Long beat Murphy and put him in the
trunk of Jackson's car. The three took their captive to the house of Long's and Jackson's
grandmother, who was deceased. Once they arrived at the house, they beat Murphy again and began
firing shots around his feet.

 When one shot accidentally hit Murphy's foot, Easter told Jackson,
"You've got to let me do him. I can't go back to prison."

 According to Long, Easter fired several
shots into Murphy's torso. Easter then told Long to "get another gun." Long located and gave a rifle
to Easter, which Easter then used to continue to shoot Murphy. 
            Danny Goodson testified he was an acquaintance of Jackson, having let Jackson previously
store marihuana on Goodson's property. Goodson said that, about 1:00 a.m. July 6, 2001, Jackson
called Goodson and said he needed a favor. Goodson testified he did not know what the favor was
until the three men arrived at Goodson's property. Jackson, Long, and Easter arrived at Goodson's
property and used Goodson's wheelbarrow to remove Murphy's body from Jackson's trunk. They
took the body to an existing hole Goodson used to dispose of animal waste and remains.

 Murphy's
body was thrown in the hole, doused with gasoline, and set on fire. While this was happening,
Goodson said Easter bragged about having shot Murphy. 
            Some days later, Jackson contacted Goodson and returned to the site to remove the remains
from the waste hole. Goodson and his friend John Blumen

 (who had been present the night of the
burning) helped Jackson dig up Murphy's remains and scatter the remains around Goodson's
property. DeKalb Police Chief Dewayne Cannon testified that approximately twenty-seven bones
were found around the property, and they appeared to have been gnawed and partially consumed by
animals in the wooded area. Murphy's head was severed from the body, placed in a bucket, covered
with cement, and thrown into the Red River from the bridge at the Texas–Oklahoma state line. No
evidence indicates Goodson was involved in the disposal of the head. Using a saliva sample from
Murphy's brother, a medical expert from the Federal Bureau of Investigation was able to conduct
mitochondrial DNA testing identifying the DNA sequence from Murphy's brother as the same as that
from Murphy's remains. 
Goodson Is Not an Accomplice as a Matter of Law
            Easter's first point of error claims the trial court erred in not instructing the jury that Goodson
was an accomplice as a matter of law. Alternatively, Easter claims the trial court erred in failing to
instruct the jury to determine whether Goodson was an accomplice in fact. At trial, Easter requested
the trial court instruct the jury that Goodson was an accomplice as a matter of law. He did not
specifically request a jury instruction on the matter of accomplice as a matter of fact.

 
            An accomplice is one who participates with a defendant before, during, or after the
commission of a crime and who acts with the required culpable mental state. Paredes v. State, 129
S.W.3d 530, 536 (Tex. Crim. App. 2004). A conviction cannot be based on the testimony of an
accomplice witness unless corroborated by evidence tending to connect the defendant with the
offense committed. Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005). The accomplice's
participation must involve some affirmative act that promoted the commission of the offense with
which the accused is charged. An accomplice as a matter of law is one who is susceptible to
prosecution for the offense with which the accused is charged or a lesser-included offense. Paredes,
129 S.W.3d at 536. The trial court is under no duty to instruct the jury unless there exists no doubt
or the evidence clearly shows that a witness is an accomplice witness as a matter of law. Id. 
Goodson did not deny his culpability for the charge of tampering with evidence, and Chief Cannon
said he believed Goodson had committed that crime. Goodson was charged with tampering with
evidence, but not murder or capital murder. Tampering with evidence is not a lesser-included
offense of capital murder.

 Further, we do not believe Goodson was susceptible to prosecution for
capital murder or any lesser-included offense of capital murder. Paredes is factually similar to this
case. In Paredes, a witness, Ayala, received a telephone call to do a favor for the defendant. When
Ayala arrived to assist the defendant, he discovered some rugs rolled up in the back of a pickup truck
and realized the rugs contained bodies. Ayala then helped load the bodies and assisted in disposing
of them. The Texas Court of Criminal Appeals held there was no evidence Ayala was involved with
the planning of the murders or ever saw the victims when they were alive. Assisting after the fact
in the disposal of the bodies does not subject the witness to prosecution for capital murder. 
Consequently, Ayala was not an accomplice witness as a matter of law. Id. at 537. Similarly, here,
Goodson did not participate in the planning of the murder or commit any affirmative act that
promoted the commission of the offense of capital murder. Goodson was not an accomplice witness
as a matter of law, and the trial court was not required to instruct the jury that Goodson was such an
accomplice witness. See Bulington v. State, No. 06-04-00135-CR, 2005 WL 2847406 (Tex.
App.—Texarkana Nov. 1, 2005, no pet.) (where defendant's girlfriend helped him clean murder
scene and dispose of victim's bodies because she feared defendant, coupled with lack of evidence
she had any anticipatory knowledge that defendant intended to kill or commit a crime of violence
against two victims, held girlfriend was not accomplice in either law or fact). 
Goodson Is Not an Accomplice as a Matter of Fact
            Easter argues that Goodson was an accomplice as a matter of fact. If there is conflicting
evidence, making it unclear whether the witness is an accomplice, the trial court must submit a jury
instruction on the issue of accomplice as a matter of fact. Blake v. State, 971 S.W.2d 451, 454–55
(Tex. Crim. App. 1998); Paredes, 129 S.W.3d at 536; Long v. State, 10 S.W.3d 389, 393 (Tex.
App.—Texarkana 2000, pet. ref'd). Long, one of Easter's codefendants, stated on cross-examination
that shortly after the murder of Murphy, Long had given a statement to authorities wherein Long said
he and Jackson left Murphy, alive, with Easter. Long and Jackson went to Jackson's home, where
Long heard Jackson telephone someone and tell that party Jackson had "a body . . . to dispose of."

 
Chief Cannon said that, through his investigation, he concluded Murphy was left, alive, in the care
of Easter, while Jackson and Long went to their grandmother's house. 
            Easter argues that this evidence, suggesting Murphy was still alive when Jackson telephoned
Goodson, amounts to conflicting evidence as to whether Goodson was an accomplice. None of this
is evidence that Goodson had any knowledge Murphy was alive or that Goodson committed any act
that planned or promoted the commission of the murder.

 Goodson testified he received a call from
Jackson, who said he needed a favor. As we have previously discussed, the Texas courts have held
on many occasions that assisting with the disposition of a body does not make one an accomplice
to the charge of murder. See Smith v. State, 721 S.W.2d 844, 851 (Tex. Crim. App. 1986); Husting
v. State, 790 S.W.2d 121, 124 (Tex. App.—San Antonio 1990, no pet.); Keegan v. State, 681 S.W.2d
806, 812 (Tex. App.—Houston [14th Dist.] 1984, pet. ref'd). There was no conflicting evidence of
Goodson's participation in the murder. 
            Easter cites us to Harris v. State

 as authority that the trial court was obligated to allow the
jury to determine whether Goodson was an accomplice as a matter of fact. We find Harris
distinguishable. There, the purported accomplice witness was present during the murder, had blood
on her clothing, offered conflicting statements about her role in the murder, and expressed a
consciousness of guilt.

 In contrast, in this case, there is no evidence that Goodson was present at
the time of the murder or that he was a participant in the murder. There is no evidence Goodson
affirmatively acted to assist in the planning or commission of the murder. Even if Goodson was told
there was a body to dispose of, such information would have conveyed to him that the murder was
completed. 
            In the absence of conflicting evidence, there was no error in the trial court failing to submit
to the jury the question of whether Goodson was an accomplice as a matter of fact.
Sufficiency of the Evidence
            Easter's second point of error is that the evidence is insufficient if the accomplice witness
testimony is excluded. Since we have found that Goodman was not an accomplice witness as a
matter of fact or law, the point is overruled. 
Goodson Was Not Part of a Conspiracy
            Finally, Easter complains Goodson "was an accomplice witness under the definition of
criminal responsibility as set forth in V.T.C.A., Penal Code, §7.02(b)." Section 7.02(b) of the Texas
Penal Code states:
(b) If, in the attempt to carry out a conspiracy to commit one felony, another
felony is committed by one of the conspirators, all conspirators are guilty of the
felony actually committed, though having no intent to commit it, if the offense was
committed in furtherance of the unlawful purpose and was one that should have been
anticipated as a result of the carrying out of the conspiracy.
Tex. Pen. Code Ann. § 7.02(b) (Vernon 2003). Assuming a conspiracy to kill Murphy existed,
nothing in the evidence summarized above indicates Goodson conspired with Easter, Jackson, and
Long to harm Murphy. Cf. Paredes, 129 S.W.3d at 539 (trial court instructed jury on
Section 7.02(b)'s language; Paredes argued on appeal the trial court should have also instructed on
accomplice witness testimony; no evidence purported accomplice witnesses conspired to kill victim). 
Here, there is no evidence that Goodson knew of any conspiracy to kill Murphy or that Goodson was
involved in the murder of Murphy. This point is overruled. 
            We affirm the judgment of the trial court.
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          November 17, 2005
Date Decided:             January 6, 2006

Do Not Publish

od to resolving individual issues. Nissan Motor
Co. v. Fry, 27 S.W.3d 573, 592 (Tex. App.-Corpus Christi 2000, pet. denied). However, a detailed
trial plan is not required in every class action case and may not be necessary for every class
certification, for example, where plaintiff's claims stem from identical contractual language and a
uniform pattern of misconduct. State Farm Mut. Auto. Ins. Co. v. Lopez, 68 S.W.3d 701, 702 (Tex.
App.-Corpus Christi 2001, no pet. h.). 

 The "rigorous analysis" required by Bernal is set in the context of analyzing whether the
predominance requirement of Texas Rule of Civil Procedure 42(b)(4) was met. Bernal, 22 S.W.3d
at 435. To the extent that trial court are required to conduct a rigorous analysis of the requirements
under other provisions of Rule 42 and include a trial plan in the order certifying a class under other
provisions of Rule 42(b), the trial court's order is sufficient. This point is overruled. 

Commonality

 Kemper contends there are no issues of law or fact that are common to all class members. 

 The movant must establish that there are questions of law or fact common to the class. Tex.
R. Civ. P. 42(a). Questions common to a class are those which when answered as to one class
member are answered as to all class members. Chevron U.S.A., Inc. v. Kennedy, 808 S.W.2d 159,
162 (Tex. App.-El Paso 1991, writ dism'd w.o.j.). Commonality does not require that all questions
of law and fact must be identical, but only that an issue of law or fact exists that inheres in the
complaints of all class members. Microsoft Corp. v. Manning, 914 S.W.2d 602, 611 (Tex.
App.-Texarkana 1995, writ dism'd). A single question could provide adequate grounds for a class
action. Wente v. Georgia-Pacific Corp., 712 S.W.2d 253, 255 (Tex. App.-Austin 1986, no writ). 
The trial court must identify the substantive issues controlling the outcome of the litigation, not to
weigh the substantive merits of each class member's claims, but to determine whether the character
and nature of the case satisfy the commonality requirement. Sun Coast Res., Inc. v. Cooper, 967
S.W.2d 525, 533 (Tex. App.-Houston [1st Dist.] 1998, pet. dism'd w.o.j.). 

 In the order certifying the class, the trial court identified common legal issues. The court
found that all members of the class seek both a ruling that Kemper must receive an assignment of
benefits before issuing a personal injury protection benefit check naming a health care provider as
a sole or additional payee and a determination as to the form the assignment must take in order to
comply with the terms of the policy. All members assert that Kemper has waived as a matter of law
its rights to audit the claims already paid for purposes of assessing coverage and the reasonableness
and necessity of charges incurred. All members seek a finding that the date the claims were actually
paid establishes the date on which they were due for purposes of Articles 5.06-3 and 21.55 of the
Texas Insurance Code. 

 The issues are limited to determining what the rights of the parties are under the Texas
Insurance Code and the language of the insurance policy. A declaratory judgment as to these issues
would not address issues of federal preemption, or determine liability or monetary damages. 
Although Kemper has indicated that there may be at least two subgroups of members, those for
whom Kemper had not received an assignment prior to issuing payment and those for whom Kemper
had received some writing Kemper interpreted as an assignment before issuing payment. If the issue
is framed as whether Kemper must receive an assignment of benefits in a form that complies with
the terms of the policy before issuing benefit payments, the issue is common to both subgroups. The
trial court did not abuse its discretion in determining that common issues existed. This point is
overruled. 

Typicality

 Kemper contends that Bailey's claims are not typical of those of the class because Kemper
has a defense peculiar to Bailey that destroys the typicality of the class. 

 The typicality requirement generally mandates that the class representative possess the same
interests and suffer the same injuries as the class. Fry, 27 S.W.3d 573; E. Tex. Motor Freight Sys.,
Inc. v. Rodriguez, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977). The typicality requirement
is satisfied when the evidence establishes that the class representative's claims have the same
essential characteristics as those of the class as a whole. Manning, 914 S.W.2d at 613; Glassell v.
Ellis, 956 S.W.2d 676, 685 (Tex. App.-Texarkana 1997, pet dism'd w.o.j.). The injuries suffered
need not be identical, but there must be a nexus between the injuries suffered by the representative
and those suffered by the other members of the class. State Farm Mut. Auto Ins. Co. v. Lopez, 45
S.W.3d 182, 191 (Tex. App.-Corpus Christi 2001, pet. filed). The claims must arise from the same
event or course of conduct giving rise to the claims of other class members and must also be based
on the same legal theories. Id. at 191; Stromboe, 28 S.W.3d at 210; Manning, 914 S.W.2d at 613. 
The presence of an "arguable defense unique to the named plaintiff" properly negates typicality only
when "it is predictable" that such defense will become a "major focus of the litigation," Koos v. First
Nat'l Bank, 496 F.2d 1162, 1164 (7th Cir. 1974), such that the named plaintiff "will become
distracted by the presence of a possible defense . . . that the representation of the rest of the class will
suffer," J. H. Cohn & Co. v. Am. Appraisal Assocs., Inc., 628 F.2d 994, 999 (7th Cir. 1980). 

 Kemper argues that an actual assignment of benefits is a defense to liability for having paid
PIP benefits to a health care provider without first receiving an assignment. Although Kemper may
have unique defenses to liability regarding each member of the class, the class is not certified to
determine any liability. Therefore, it is not predictable that these defenses will become a major focus
of the class-action proceedings, as the class is currently certified. 

 Because the language of the insurance agreement and statutes are the same for all members
of the class, the language will have one meaning which applies to all members of the class. Bailey's
claims arise out of the same course of conduct that affects the other members of the class, Kemper's
interpretation of the insurance agreement. Such interpretation provides the nexus between the
injuries suffered by Bailey and those suffered by the other members of the class regarding Kemper's
conduct pursuant to this provision of the insurance agreement. Bailey raises both the timeliness of
the receipt of an assignment in relation to payment of benefits and the adequacy of the form of the
assignment to cover the requested health care provider charges. Although the particular facts of each
member's case may differ, Bailey's concerns of timeliness and adequacy are typical concerns shared
by the class. The trial court did not abuse its discretion in finding that Bailey's claims for declaratory
relief are typical of the other members of the class. This point is overruled. 

Fair and Adequate Representation

 Kemper contends the trial court abused its discretion in finding that Bailey and his counsel
will fairly and adequately protect the interest of the class. Kemper argues that Bailey did not
establish his familiarity with the basic issues including composition of the class and the damages
sought.

 Adequacy of representation is a question of fact and must be determined based on the
individual circumstances of the case. Forsyth v. Lake LBJ Inv. Corp., 903 S.W.2d 146, 150 (Tex.
App.-Austin 1995, writ dism'd w.o.j.). Among the factors affecting the adequacy determination are
(1) adequacy of counsel, (2) potential for conflicts of interest, (3) personal integrity of the plaintiffs,
(4) whether the class is unmanageable because of geographical limitations, (5) whether the plaintiffs
can afford to finance the class action, (6) the representative's familiarity with the litigation and belief
in the legitimacy of the grievance, and (7) the representative's willingness and ability to take an
active role in and control the litigation, and to protect the interests of the other class members. Id.;
Glassell, 956 S.W.2d at 682. Regarding familiarity, a class representative should be familiar with
the basic issues, including composition of the class and damages sought. See Manning, 914 S.W.2d
at 615. 

 Kemper argues that because the definition of the class was expanded after the certification
hearing, it was impossible for Bailey to establish his familiarity with the composition of the class.
However, as mentioned above, the court was not confined to the class definition proposed in the
original petition. If there were sufficient materials to convince the court that Bailey was familiar
with the composition of the class, even if the proposed definition was not the best way to define the
appropriate class, then the court did not abuse its discretion in determining that Bailey was familiar
with the composition of the class he sought to represent. 

 Bailey stated in his deposition that if an assignment was received by Kemper before Kemper
issued payment, the covered person would not be included in the class. However, Bailey later stated
that the validity of the assignment would need to be addressed by the court. Although Bailey never
explicitly provided either the proposed or certified definition, when asked specific questions about
who would be included in the class, under specific scenarios, his answers were consistent with the
composition of the certified class. Bailey demonstrated his familiarity with the class he sought to
represent. 

 Kemper also argues that Bailey was not familiar with the damages he sought to recover on
behalf of the class. At no time did Bailey include declaratory or injunctive relief when asked what
relief he sought on behalf of the class. While the declaratory judgment would provide a form of
relief, alone it would not provide damages, but might provide the contractual and statutory
interpretation necessary for the members of the class to recover the damages sought. It is reasonable
for the court to find Bailey familiar with the damages sought on behalf of the class without Bailey
having mentioned declaratory relief. At the hearing, Bailey stated, "The penalties and interest should
go to the people that are in our class, and obviously attorney's fees." In his deposition, Bailey
referred to multiple penalties, but only one statute, the PIP statute. While the representative should
be familiar with the basic issues including damages sought, there is no requirement that the
representative be familiar with the specific statutes under which such damages are sought. Although
Bailey stated in his deposition that he was unsure whether he was seeking return of the PIP benefits
paid to the health care providers, in context, his uncertainty arose from his interpretation of the 
defendant's questions, that Kemper thought he should be seeking to recover the PIP payments that
were made. At one point he stated, "If Kemper believes we should, I guess, we would." This
indicates his understanding that he had not been seeking the PIP payments on behalf of the class
along with his willingness to do so if it was necessary to "make sure it is done right." The trial court
did not abuse its discretion in determining that Bailey was an adequate representative for the certified
class. This point is overruled. 

42(b)(2) - Acting or Refusing to Act on Grounds Applicable to the Class

 Kemper contends the trial court abused its discretion in finding that Kemper acted or refused
to act on grounds generally applicable to the entire class and that injunctive and declaratory relief
is appropriate to the class as a whole.

 Texas Rule of Civil Procedure 42(b)(2) provides for class certification when, in addition to
the requirements of Rule 42(a), the movant establishes that "the party opposing the class has acted
or refused to act on grounds generally applicable to the class, thereby making appropriate final
injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . ." The
framers of the federal rule, from which the Texas rule is drawn, intended (b)(2) to "reach situations
where a party has taken action or refused to take action with respect to a class and final relief of an
injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with
respect to the class as a whole, is appropriate." Fed. R. Civ. P. 23 (advisory committee notes). 

 Bailey argues that by definition every member of the class will have been subjected to the
identical conduct of issuance of a joint or direct payment based on Kemper's interpretation of the
language of the standard Texas automobile liability insurance policy and Article 5.06-3 of the Texas
Insurance Code. Kemper maintains that neither the policy nor the law requires it to issue personal
injury protection benefits solely to the claimants unless and until it receives a signed assignment of
benefits in favor of the provider. Kemper interprets the policy to say only that Kemper must receive
an assignment without any reference as to when the assignment must be received. 

 The trial court concluded that in failing to "institute and maintain a policy requiring that an
assignment be received before any joint or direct payments were issued" Kemper had "acted and
refused to act on grounds generally applicable to the entire class." Bailey argues that all members
of the class have been subjected to the identical conduct for the identical reason, because they have
all by definition been persons to whom or on whose behalf Kemper issued a joint or direct payment. 
Although the issues of liability and damages may be different for the individual members of the
class, with some members possibly suffering no injury at all because Kemper's interpretation of the
contract provisions did not produce an incorrect result, the court did not abuse its discretion in
determining that Kemper had acted or refused to act on grounds applicable to the class. This point
is overruled. 

Declaratory Relief Predominating the Monetary Relief Sought 

 Kemper contends that the trial court abused its discretion in finding that the monetary relief
requested did not predominate over the declaratory relief. Kemper argues that because Bailey sought
both a declaration of the rights of all class members under the insurance policy and Articles 5.06-3
and 21.55 of the Texas Insurance Code and also seeks damages pursuant to those articles, as well
as attorney's fees and interest, and because removal of the request for a declaratory relief would not
impact the substance of the cause of action or change the effect of the court's finding, the declaratory
relief sought is superfluous and therefore does not predominate. 

 Cases interpreting Texas Rule of Civil Procedure 42(b)(2) require the court to find the
declaratory relief sought must predominate the monetary relief sought. TCI Cablevision v. Owens,
8 S.W.3d 837, 847 (Tex. App.-Beaumont 2000, pet. dism'd by agr.). Claims for monetary relief
"predominate unless they are incidental to related claims for injunctive or declaratory relief. 
Incidental damages are damages that flow directly from liability to the class as a whole on claims
forming the basis of the injunctive or declaratory relief." Id.; Allison v. Citgo Petroleum Corp., 151
F.3d 402, 425 (5th Cir. 1998).

 The trial court did not certify this class regarding either the statutory penalties or the causes
of action that would give rise to the statutory penalties. (1) The declaratory judgment sought by Bailey
would not establish Kemper's liability to the class as a whole. Looking only at Bailey's request for
declaratory and injunctive relief, we cannot say that the trial court abused its discretion in
determining that the declaratory judgment predominates over any monetary relief sought. This point
is overruled. 

Failure to Certify Under 42(b)(4)

 Bailey contends the trial court erred in failing to find that common issues of law and fact
predominate over questions affecting only individual members, thus denying certification under Rule
42(b)(4). 

 Texas Rule of Civil Procedure 42(b)(4) provides that 

 An action may be maintained as a class action if the prerequisites of subdivision (a)
are satisfied, and in addition: . . . the court finds that the questions of law or fact
common to the members of the class predominate over any questions affecting only
individual members, and that a class action is superior to other available methods for
the fair and efficient adjudication of the controversy. The matters pertinent to the
findings include: (A) the interest of members of the class in individually controlling
the prosecution or defense of separate actions; (B) the extent and nature of any
litigation concerning the controversy already commenced by or against members of
the class; (C) the desirability or undesirability of concentrating the litigation of the
claims in the particular forum; (D) the difficulties likely to be encountered in the
management of a class action.

 Bailey challenges only the trial court's failure to make a determination that common issues
of law and fact predominate over individual issues. Even if the trial court abused its discretion in
failing to find that common issues predominate over individual ones, because the trial court did not
include a statement in the order of certification finding that a class action is superior to other
available methods for the fair and efficient adjudication of the controversy, the court may have based
its decision on a finding that a class action was not superior to other methods of adjudication. Bailey
does not challenge the trial court's failure to find that a class action is superior to other methods of
adjudication. Therefore, Bailey waives any error in the court's failure to make such a finding. We
cannot conclude that the court abused its discretion in declining to certify the class under Rule
42(b)(4). This point of error is overruled. 

 The judgment is affirmed.

 Ben Z. Grant

 Justice

Date Submitted: April 25, 2002

Date Decided: July 11, 2002

Publish
1. Although the trial court's certification order states that "[T]he Court finds that the requested
statutory penalties flow automatically and incidentally from the rights established by the requested
declaratory judgment and do not predominate," this finding is superfluous to the order because the
class was not certified for monetary relief nor the causes of action that would allow for such
recovery: negligence, breach of contract, violation of statute. Furthermore, the finding is erroneous
because a declaration regarding what the terms of the contract require does not determine that the
contract was breached as to all members of the class. Such a declaration does not establish that a
statute was violated, a required finding to recover the eighteen percent statutory penalty under Tex.
Ins. Code Ann. art, 21.55, 6 (Vernon Supp. 2002). Such a declaration also does not establish that
an insurer failed to pay certain benefits when due, which is required in order to recover the twelve
percent statutory penalty under Tex. Ins. Code Ann. art. 5.06-3(3). That provision also requires that
the insurer be required to pay such benefits as the insurer failed to pay when due and for which the
person entitled to such benefits brought an action in contract to recover the same. See Tex. Ins.
Code Ann. art. 5.06-3(3) (Vernon Supp. 2002). In short, the declaratory relief would not relieve the
Plaintiffs from proving, outside the purview of the certified class action, their individual causes of
breach of contract and violation of statute in order to recover the statutory penalties.